## SHERRILL v. UNION LUMBER CO.
### (No. 390.)

(Court of Civil Appeals of Texas. Beaumont. Nov. 29, 1918.)

1. TRIAL ☞352(1)—FRAMING OF ISSUES.

An affirmative instruction *held* to sufficiently present same issue as that requested, although requested instruction was in the negative form.

2. TRIAL ☞203(3), 350(1) — SUBMISSION OF ISSUES—AFFIRMATIVE PRESENTATION.

Where a case is submitted either under a general charge or upon special issues, a party is entitled to an affirmative presentation of an issue raised by pleadings and evidence.

3. CONTRACTS ☞108(2) — WORKMEN'S COMPENSATION ACT — CONTRACTS CONCERNING MEDICAL FEES—VALIDITY.

It was not against public policy, under the Workmen's Compensation Act, pt. 1, § 7 (Vernon's Sayles' Ann. Civ. St. 1914, art. 5246k), for an employer to agree to pay a doctor a salary, the employer to retain the medical fees allowed by the insurance association.

---

**4. CONTRACTS ⬦⟹138(4) — PARI DELICTO — WORKMEN'S COMPENSATION ACT.**

If it is against public policy for an employer to contract to pay a doctor a salary and retain the medical fees allowed by the insurance association under Workmen's Compensation Act, pt. 1, § 7 (Vernon's Sayles' Ann. Civ. St. 1914, art. 5246k), physician entering into such a contract is in pari delicto and cannot sue the employer for such fees, having received and retained his salary, since he cannot affirm in part and repudiate in part.

**5. NEW TRIAL ⬦⟹102(8)—NEWLY DISCOVERED EVIDENCE—ABSENT WITNESSES.**

Where the existence of evidence was known at the time of the trial, but not the whereabouts of the witness, and no continuance or postponement was requested, new trial on the ground of newly discovered evidence was properly refused, although great effort was made to find the witness before trial.

**6. APPEAL AND ERROR ⬦⟹981—NEW TRIAL ⬦⟹99—DISCRETION OF COURT—REVIEW.**

Motions for new trial for newly discovered evidence are addressed to the sound discretion of the trial judge, and where denied appellate court will not reverse, except for clear abuse.

Appeal from District Court, Liberty County; J. Llewellyn, Judge.

Action by E. A. Sherrill against the Union Lumber Company. Judgment for defendant, and plaintiff appeals. Affirmed.

E. B. Pickett, Jr., of Liberty, for appellant. Huggins & Kayser, of Houston, and H. E. Marshall, of Liberty, for appellee.

HIGHTOWER, JR., C. J. We adopt, as substantially correct, the following statement of the nature and result of this suit, as found in the brief of plaintiff in error, and which is concurred in by the defendant in error:

This suit was filed by Dr. E. A. Sherrill, as plaintiff, against the Union Lumber Company, as defendant, for the sum of $1,753, plaintiff claiming that such sum was due him for medical treatment rendered to injured employés of the defendant company during the first week of their injuries, in accordance with the Workmen's Compensation Act of this state. The defendant, Union Lumber Company, operated a sawmill at Milvid, in Liberty county, and on January 1, 1914, the plaintiff entered its employ as a physician for a salary of $150 per month; and in August, 1914, his salary was reduced to $101.50; and on May 1, 1915, another change was made with respect to the cash compensation plaintiff was to receive, and from the last-named date plaintiff was to receive as cash compensation all the medical fees that should be collected by the defendant company from its employés, less $40, it being agreed and understood between plaintiff and defendant that the latter would col-

lect from every married man on its pay roll $1.75, and from each single man 75 cents.

It was alleged by the plaintiff that when he first entered the defendant's service, on January 1, 1914, and when later the amount of salary to be paid him was changed twice, as above stated, his contract and agreement with the defendant further was that said compensation above stated should not include the medical services or treatment which plaintiff might render to employés of defendant during their first week of injuries, and that it was also a part of the agreement and contract between plaintiff and defendant that plaintiff was to be allowed to engage in such other practice, including treatment of injured employés during their first week of injuries, as he might be called upon to perform, and which he would have to attend to; and that, for the medical services and attention which plaintiff might render to any injured employé of defendant during the first week of injury, he was to receive the fee paid therefor by the insurance company with which defendant might be carrying its risk, in accordance with the terms of the Workmen's Compensation Act of this state (Acts 33d Leg. c. 179 [Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h to 5246zzzz). It was further alleged by plaintiff that, after he would render such medical services to injured employés during their first week of injuries, he would make up a monthly account or statement, and send same to the defendant for the purpose of having defendant collect the sums so due plaintiff from the insurance company which was liable for same, and then to place such collections to the credit of plaintiff on the ledger account which plaintiff had with defendant, and that while that course of dealing was followed the defendant did collect upon such account the sum of $1,753.50, which it refused to pay plaintiff.

The defendant, Union Lumber Company, answered by general denial, and also, by exception and defensive plea, interposed the two-year statute of limitation to all of the items contained in plaintiff's petition for services rendered by plaintiff two years prior to the filing of this suit. The defendant also reconvened against plaintiff for the sum of $429.66, claiming that amount as a balance against plaintiff on account of cash and certain articles of value which defendant had furnished to plaintiff while he was in its employ.

The case was tried with a jury, and was submitted upon one special issue, and, upon the jury's answer thereto, judgment was rendered that plaintiff should take nothing against defendant on his cause of action, and that the defendant should recover on its cross-action against plaintiff the sum of $429.66, with legal interest. Plaintiff's motion for

---

⬦⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

new trial having been overruled, a writ of error was prosecuted by him to this court.

[1] The first, second, and third assignments of error are grouped, and treated together, and they all relate to the action of the trial court regarding the one special issue submitted to the jury, and in refusing a special issue instead thereof requested by plaintiff in error. The special issue submitted by the court for the jury's answer was as follows:

"Was it understood or agreed by and between Dr. Sherrill and the Union Lumber Company that he, Dr. Sherrill, should receive the fees due from the insurance company for treatment of injured employés for the first seven days? (Answer Yes or No.)"

In the same connection the court told the jury that the burden of proof was upon the plaintiff to establish the affirmative of the above question by a preponderance of the evidence.

The special issue which plaintiff in error requested the court to submit to the jury was as follows:

"Was it understood and agreed by and between the plaintiff, Dr. E. A. Sherrill, and the defendant, Union Lumber Company, that the monthly compensation plaintiff was to be paid by defendant included the medical treatment or attention which plaintiff rendered to injured employés during the first seven days after injury? (Answer Yes or No.)"

And in this connection the court was asked to instruct the jury that the burden of proof was upon the plaintiff to establish the negative of the above question by a preponderance of the evidence.

Plaintiff in error in due time objected to the form of the issue as submitted by the court to the jury, which objection was overruled, and the action of the court in that respect excepted to, and the action of the court in declining to submit the special issue requested by plaintiff in error was also duly excepted to. The proposition found in plaintiff in error's brief under these assignments is as follows:

"The court's charge should be so framed and expressed as to directly and clearly present the very issue raised by plaintiff's pleadings and having testimony to support it, and it is error to ignore such issue, and to fail to directly and clearly present the same, where the plaintiff has properly requested a special charge thereon."

To the question as submitted by the court to the jury, as above shown, the jury gave a negative answer.

It is contended by plaintiff in error that there is a vast distinction between the issue as submitted by the court and that requested to be submitted by him, and that the issue made by plaintiff in error, according to his pleading and evidence, was not submitted to the jury at all, and also that the issue as submitted by the court really had no dispute in the evidence.

After a very careful consideration of plaintiff in error's pleading, we have reached the conclusion that the special issue as submitted by the court to the jury embraced the very issue tendered by plaintiff in error's pleading, which was, in substance, that it was understood and agreed between plaintiff in error and defendant in error that the compensation which plaintiff in error was to be paid for his services in treating defendant's employés should not include the medical fees which should be paid by the insurance company carrying the risk on defendant in error's employés for services rendered by plaintiff in error to such employés during the first week of injuries to them. Indeed, plaintiff in error's pleading is not susceptible of any other construction. But it is contended by plaintiff in error, also, that the issue as made by his evidence was that there was no understanding or agreement between him and defendant in error to the effect that he should receive or have the fees that should be paid by the insurance company for services performed by him in treating employés during their first week of injuries, but that, on the contrary, his evidence was to the effect that he knew that he was entitled to such fees chargeable to the insurance company, as a matter of law, and that no contract or agreement about that matter was required or entered into between him and defendant in error. It is true that plaintiff in error testified on the trial, substantially, that there was no agreement or understanding between him and defendant in error to the effect that he should receive as part compensation the fees to be paid by the insurance company on account of services performed by him in treating injured employés during their first week of injuries; but he also positively testified, in substance, that at the time he entered the employ of defendant in error he was fully aware of the arrangement with reference to such fees that had been made by defendant in error with one Dr. Thomas, who was the physician at the mill, anad who was succeeded by plaintiff in error in that capacity; and that under the arrangement and contract between Dr. Thomas and defendant in error he, Dr. Thomas, in addition to the salary paid him by defendant in error, was to receive, and did receive, the fees paid by the insurance company carrying the risks of such employés; and he further testified, substantially, that it was understood and agreed between him and the defendant in error, at the time he entered its employ, that he was to have the same compensation for his services in treating such employés as was had and received by said Dr. Thomas. We are, therefore, of the opinion that plaintiff in error not only substantially alleged, but that, considering his evidence as a whole, he testified, substantially, that there was an agreement and

understanding between him and defendant in error that he should have and receive the fees to be paid by the insurance company for services performed by him upon injured employés during the first week of injuries. If we are correct in this, then it follows that the issue submitted by the court to the jury was, in substance, not only the issue as tendered by plaintiff in error's pleading, but was also substantially the issue made by his evidence; and, the jury having determined that that issue should be answered in the negative, they could not consistently have given a negative answer to the question or issue which plaintiff in error requested the court to submit. Indeed, we are of the opinion that while the verbiage and form of the two issues are somewhat different, nevertheless, in substance they are practically the same. It may be that a very astute legal mind might be able to detect a shade of difference between the substance of the two issues, when considered in the light of the pleadings and the evidence, yet this court has been unable to detect such a difference, and we feel sure that ordinary minds, such as are presumed to be possessed by average jurors, would not, and could not, discover any difference between the issue as submitted by the court and that requested by plaintiff in error, and we feel sure that no injury resulted to plaintiff in error from the action of the court in submitting the issue as it did, or in refusing to submit the issue as requested by plaintiff in error.

[2] In support of the proposition of plaintiff in error under these assignments, as above mentioned, a number of cases are cited, commencing with that of Wichita Falls Traction Co. v. Adams, 107 Tex. 612, 183 S. W. 156. In that case it was said, substantially, that in a jury trial, where the case is submitted under a general charge, a party is entitled to an affirmative presentation of an issue raised by the pleading and the evidence upon which he relies. We have no fault to find with the rule there announced, but, on the contrary, believe it to be a sound and just rule, and that it should be applied, not only in jury trials, where a case is submitted upon a general charge, but can see no reason why such rule should not also apply where the case is submitted upon special issues. This same principle was clearly announced by the Supreme Court of this state in Ry. Co. v. McGlamory, 89 Tex. 639, 35 S. W. 1058, and in Ry. Co. v. Shieder, 88 Tex. 166, 30 S. W. 902, 28 L. R. A. 538. Therefore, it might be, and it is conceded, that the proposition of plaintiff in error, as above stated, announces a correct rule. But, from what we have said, it does not follow that plaintiff in error's assignments in this connection should be sustained, but, on the contrary that they should be overruled.

By the fourth assignment of error it is complained that the trial court committed error because it refused to peremptorily instruct the jury to find in favor of plaintiff in error for the whole amount sued for by him, less the amount claimed by defendant in error on its plea in reconvention.

[3, 4] This contention is based upon the theory entertained by plaintiff in error that if plaintiff in error and defendant in error in fact entered into an agreement or contract to the effect that the defendant in error should collect and receive the fees to be paid by the insurance company carrying the risks on the latter's employés, and which would otherwise belong to plaintiff in error, under the Workmen's Compensation Act, that then such contract was illegal, null and void, for the reason that it was against public policy, and that defendant in error could not, therefore, invoke the provisions of such contract as a defense to plaintiff in error's right of recovery in this case.

It is the contention of plaintiff in error that the tendency of such contract or agreement, if made—and the jury found, substantially, that it was made—was to trespass upon and injure the rights of workingmen generally, and to lessen the respect for, and confidence in the administration of, the Workmen's Compensation law of this state, and that, therefore, such contract urged in defense against plaintiff in error's right to recover the money here sued for should now be declared null and void.

We have not the time to here present at length the argument of the energetic and able counsel of plaintiff in error bearing upon this contention, nor do we deem it necessary, or that it would be at all enlightening, to discuss the many decisions by the appellate courts of this and other states relating to contracts which have been held illegal or unenforceable because against sound public policy. No court, so far as we have been able to ascertain, has ever attempted to announce any iron-clad rule by which to determine whether a contract between parties should be held to be illegal or unenforceable on the ground of public policy, and it would be an endless labor to undertake to discuss, or even mention, the numerous cases in which contracts have been denounced or held unenforceable on that ground. In Cyc. vol. 9, p. 481, we find this expression:

"It is not easy to give a precise definition of public policy. It is perhaps correct to say that public policy is that principle of law which holds that no person can lawfully do that which has a tendency to be injurious to the public or against the public good, which may be designated, as it sometimes has been, the policy of the law, or public policy in relation to the administration of the law. Where a contract belongs to this class it will be declared void, although in the particular instance no injury to the public may have resulted. In other words, its validity is determined by its general tendency at the time it is made, and, if this is opposed to the interests of the public, it will be invalid, even

though the intent of the parties was good, and no injury to the public would result in the particular case. The test is the evil tendency of the contract, and not its actual injury to the public in a particular instance."

The Workmen's Compensation Act of this state, which was in effect at the time the contract between the parties to this suit was made, was the act of 1913. Section 7, pt. 1, of that act (Vernon's Sayles' Ann. Civ. St. 1914, art. 5246k) provided that "during the first week of the injury the association [insurance company] shall furnish reasonable medical aid, hospital services, and medicines when needed, and if it does not furnish these immediately as and when needed, it shall repay all sums reasonably paid or incurred for same, provided reasonable notice of injury shall be given to the said association."

Under the express provisions of that act, the insurance company in this instance would have been due plaintiff in error the amount of fees as claimed by him, and for which he sued the defendant in error, and the defendant in error would be liable to plaintiff in error for the reason that it collected such fees from the insurance company, unless it was understood and agreed between plaintiff in error and defendant in error that such fees should be retained by defendant in error. But if such contract or agreement was against public policy, and therefore unenforceable, and could not be interposed as a defense to this action, and plaintiff in error be considered in a position to raise that question, then plaintiff in error should still be permitted to recover the fees paid by the insurance company to defendant in error, as claimed by him.

Now, it is claimed by plaintiff in error, among other things, that the principle of public policy here invoked by him is very similar to that which prevents a public officer from assigning the fees of his office before the same are earned. The rule which prevents a public officer from making a valid assignment of the fees pertaining to his office before same are earned by the incumbent is undoubtedly firmly established in this state, and was clearly announced by our Supreme Court in the case of National Bank v. Fink, 86 Tex. 303, 24 S. W. 256, 40 Am. St. Rep. 833; and the rule as there announced has been reaffirmed and followed by the appellate courts of this state in all subsequent cases where the point arose. We cannot concede, however, as is insisted by plaintiff in error we should, that the principle announced in those cases is decisive of the contention here made by plaintiff in error; for we cannot see how any private individual, who may perform services as a physician, can be regarded as a public officer in any sense of the term, merely because he is permitted by law to recover the reasonable value of his services as against one who, by law, is made liable for such services. Therefore we hold that such authorities as are cited by plaintiff in error in support of his contention on this point, including State National Bank v. Fink, supra, and others following that case, are not decisive of the contention here made in his favor. Plaintiff in error has not cited any statute of this state or any rule of the common law which, in our opinion, forbade the making of such a contract as the one in question here; nor has any decision emanating from any appellate court of this state been cited, nor have we been able to find one, which, in our opinion, supports the contention that the contract here in question, if made, was illegal or unenforceable for reasons of public policy, and in the absence of such a statute of this state, or a rule of the common law, we are not prepared to hold that the contract here in question was in violation of public policy of this state.

As showing the attitude of the judiciary relative to contentions of this character, we quote from Ruling Case Law, vol. 6, p. 710, § 119, as follows:

"Without minimizing the importance of the doctrine that contracts should not be enforced if they contravene public policy, many courts have cautioned against recklessness in condemning contracts as being in violation of public policy. Public policy, some courts have said, is a term of vague and uncertain meaning, which it pertains to the law-making power to define, and courts are apt to encroach upon the domain of that branch of the government if they characterize a transaction as invalid because it is contrary to public policy, unless the transaction contravenes some positive statute or some well-established rule of law. Other courts have approved the remark of an English judge, that public policy is an unruly horse, astride of which one may be carried into unknown paths. Considerations such as these have led to the statement that the power of the courts to declare a contract void for being in contravention of sound public policy is a very delicate and undefined power, and, like the power to decree a statute unconstitutional, should be exercised only in cases free from doubt. It would seem that by this statement it was not intended to place contracts on the same plane as statutes, for which there is undoubtedly no justification. All that the cautionary remarks may be interpreted to mean is that in determining whether a contract is against public policy there must be kept in view the rule that, where there is no statutory prohibition, the courts do not readily pronounce an agreement invalid on the ground of policy or convenience, but, on the contrary, are inclined to leave men free to regulate their affairs as they think proper. In other words, the courts will not declare a contract void on the ground of public policy unless it clearly appears to be in violation of the public policy of the state. A similar caution is one to the effect that before a court refuses to recognize a contract which is made in good faith, and stipulates for nothing that is malum in se or malum prohibitum, it should be satisfied that the advantage to accrue to the public from its holding is certain and substantial, not theoretical or problematical. It has also been

observed that the power to invalidate agreements on the ground of public policy is so far-reaching and so easily abused that it should be called into action, to set aside or annul the solemn engagements of parties dealing on equal terms, only in cases where the corrupt or dangerous tendency clearly and unequivocally appears upon the face of the contract itself, or is the necessary inference from the matters which are expressed; and that the only apparent exception to this general rule is to be found in those cases where the contract, though fair and unobjectionable upon its face, is a part of a corrupt scheme, and is made to disguise the real nature of the transaction. It is no doubt correct to say that, while public policy forbids the enforcement of an illegal or immoral contract, it is equally insistent that those which are lawful and contravene none of its rules shall be enforced, and not held invalid on a bare suspicion of illegality. The fact is that, as the courts are reluctant to declare a contract void as against public policy, they will refuse to do so if by any reasonable construction the contract can be upheld."

Many authorities are cited by the author in support of the text.

If, as was substantially found by the jury in this case, the plaintiff in error, upon entering the employ of the defendant in error as a physician at its mill plant, entered into an agreement or understanding with the defendant in error to the effect that plaintiff in error should be paid a certain cash compensation for his services in treating the employés of the millyard, with the further understanding or agreement that plaintiff in error would forbear to claim the fees for which the insurance company in this instance might become liable to plaintiff in error for his services to injured employés during the first week of injuries, under the Workmen's Compensation Act of this state then in effect, and, further, that such fees might be collected and retained by defendant in error, then we can see no reason for holding that such contract was in violation of the public policy of this state, and we therefore decline to so hold. But if we are wrong in this view of the question, and if the necessary tendency of such contract was vicious and against sound public policy, still there would be a serious question as to whether we ought to sustain plaintiff in error's assignment on this point, for the reason that if the contract was made he was undeniably a party to it, and if the same was vicious, and necessarily tended to injure the public generally, or any class or members of the public, or was against the public welfare in any respect, and therefore against sound public policy, then it must be admitted that the plaintiff in error was in pari delicto with the defendant in error in entering into the contract. It seems to us that the plaintiff in error should not be permitted to profit by the contract to the extent of receiving and retaining the compensation that was allowed him by the defendant in error under its terms, and at the same time repudiate that portion of the contract which gave to defendant in error the right to collect and retain the fees paid by the insurance company, and which were held by defendant in error under the terms of the claimed contract. If such contract was made, then it was in virtue of its very terms that plaintiff in error was upon the millyard at all for the purpose of treating defendant in error's employés, and, whatever the contention of plaintiff in error may be in this connection, it is manifest to us that it is solely upon this contract that plaintiff in error relied for a recovery in this case. No other or different cause of action was interposed or suggested by his petition in the case. If it should be held that plaintiff in error can assail this contract in so far as it permitted the defendant in error to have and receive the money to be paid by the insurance company on the ground of public policy, then it would be to hold, in effect, that plaintiff in error might take advantage of a vicious and illegal contract to which he was undeniably a party, in so far as the same was beneficial or favorable to him, and repudiate it in all respects where not so. For this reason alone we would be inclined to overrule the assignment, even if we were of the opinion that the tendencies of the contract were such as to make it against public policy. Edwards County v. Jennings, 89 Tex. 618, 35 S. W. 1053; Ins. Co. v. Pearson, 188 S. W. 513; Reed v. Brewer, 90 Tex. 144, 37 S. W. 418. We think these authorities to some extent at least sustain our views on this point. The fourth assignment is therefore overruled.

[5] By the fifth assignment it is complained that the trial court committed error in overruling plaintiff in error's motion for a new trial, based upon the absence of testimony claimed by him to have been newly discovered.

It is shown by the record that this suit was filed in the district court of Liberty county on September 9, 1916, and the trial was commenced on the 13th and concluded on the 15th days of December following. There was attached to the amended motion for new trial an affidavit by one Lattimer, which affidavit was dated December 18, 1916, three days after the trial of this case was concluded. In this affidavit Lattimer stated, among other things, that he was the superintendent of the Union Lumber Company at its mill at Milvid, and that it was he who employed plaintiff in error as a physician for the company at said mill, and that in such contract of employment the agreement between himself and the plaintiff in error, Dr. Sherrill, was that Dr. Sherrill should receive a salary of $150 per month, and in addition to that should receive $30 per month from the Southwestern Hotel Company, and that also, as an extra inducement to Dr. Sherrill, it was further understood and agreed by Lattimer, acting for the Union Lumber Company,

and Dr. Sherrill that he, Dr. Sherrill, should receive and have all medical fees to be paid by the insurance company for treating employés at the mill during the first week of injury to them, and that it was upon such understanding and agreement that Dr. Sherrill accepted the position as physician at the mill, and that his employment thereunder began on the 1st day of January, 1914. It is contended by plaintiff in error that these facts stated in the affidavit of Lattimer were in the nature of newly discovered evidence, and that same was highly material, and not cumulative, and that he was not lacking in diligence to procure such evidence at the trial, and that, therefore, as a matter of right, he was entitled to a new trial, to the end that he might have the benefit of this evidence on the part of Lattimer, and, further, that the trial court abused its discretion in denying the motion for new trial on that ground.

It is stated by the plaintiff in error in his brief that he was compelled to depend upon his own testimony alone for a recovery in this case, and that in all probability the result would be different on another trial if it should be allowed him, and he should have the benefit of the evidence of Lattimer.

It is clear from the record in this case that the plaintiff in error, as early as April, 1916, was fully aware of the contention of the defendant in error, to the effect that under his contract of employment with defendant in error the latter was entitled to collect and retain the fees paid by the insurance company hereinbefore mentioned, and that such contention would be made and insisted upon when this case should proceed to trial in the lower court. Notwithstanding this knowledge on plaintiff in error's part, when the case was reached for trial in the lower court, in December following, no postponement or continuance was requested by him for the purpose of procuring this evidence on the part of Lattimer, but it seems from the record that he announced ready for trial, with full knowledge that he would be dependent upon his own evidence alone as to the character of the contract or agreement between him and defendant in error, and with full knowledge that the defendant in error would dispute and contradict his own evidence touching the nature and extent of this contract.

Now, in the first place, we are not prepared to say that this evidence on the part of Lattimer could be considered "newly discovered" in any sense of the term; because if it be true that plaintiff in error had such an agreement and contract with Lattimer, as the latter states in his affidavit was had, certainly the plaintiff in error, being a party to that contract, was fully aware of its terms, at least substantially so, and we cannot see how it could be contended that such evidence was, in fact, "newly discovered," in the legal sense of that term; but it seems to us, on the contrary, that it must be held that plaintiff in error knew, or had reason to believe, that he could prove these facts by Lattimer at the very time he voluntarily proceeded to trial in this cause. In justice to plaintiff in error, it is proper to say that the record discloses that as early as June, 1916, plaintiff in error commenced efforts to locate Mr. Lattimer, and that he made a number of inquiries as to the whereabouts of Lattimer during the interval between June and shortly prior to the trial below. It seems that Mr. Lattimer, after he severed his connection with the Union Lumber Company at Milvid, which was shortly after plaintiff in error entered its employ, traveled about considerably, and resided or sojourned at different places in this state, as well as at different places in the state of Louisiana; during which period of time, with the exception of one occasion in the city of Houston, Tex., plaintiff in error never saw Lattimer, and did not know his whereabouts, or of his own knowledge how Lattimer might be reached; and it might be conceded that the diligence used by plaintiff in error and his counsel to ascertain the whereabouts of Lattimer, with a view to having the benefit of his evidence, until a short while prior to the date of the trial in the lower court, was sufficient. But it does not follow from this fact that Lattimer's evidence was newly discovered, nor does it follow that plaintiff in error was not lacking in diligence when he failed to move for a postponement or continuance of the cause, when reached for trial, in order that he may have further time to find Lattimer and have the benefit of his evidence.

Before this court would be authorized to hold that the trial court was in error in denying the motion for new trial in this case, it should be able to say that Lattimer's evidence was, in contemplation of law, newly discovered, and that the same was material, and that plaintiff in error made a clear showing of diligence to procure such evidence, and have the benefit of same on the trial below, and in addition thereto that such evidence was of such a character as would probably cause a different result on another trial.

That such evidence would have been material to plaintiff in error on the trial below cannot be questioned, and, as before stated, it might be conceded that plaintiff in error, from about the 1st of June until a short time before the trial in December, used diligence, which would ordinarily be sufficient, to locate Lattimer and obtain his testimony; but we cannot say, in view of this record, that it is probable that Lattimer's evidence, had it been before the jury, would have caused a different result in this case, and we are clearly of the opinion that his evidence cannot be said to have been newly discovered. Under such circumstances, we think it was the clear duty of the plaintiff in error to have moved for a postponement or continuance of

his case when the same was called for trial, in order to procure the evidence of Lattimer, and, since it is apparent from the record that no such action was taken by him, we would not be authorized to hold that the court committed error in denying his motion for a new trial.

[6] The rule in this state is that motions for new trial based upon the ground of "newly discovered" evidence, in the proper sense of the term, are addressed to the sound discretion of the trial judge, and, where such motions are denied by him, the appellate court will not reverse the judgment for that reason, unless the latter court can say from the record that the trial court clearly abused the discretion which the law gives him in such matters, and in this instance this court is of the opinion that it would not be authorized to so hold.

In the case of Johnson v. Brown, 65 S. W. 485, the Court of Civil Appeals at San Antonio, speaking through Chief Justice James, held, in substance, that a new trial sought on the ground of newly discovered evidence was properly refused by the trial judge, where the existence of such evidence was known at the time of the trial, but not the whereabouts of the witness, and no continuance or postponement was requested in order that such evidence might be had. We are of opinion that that case is squarely in point on the question here raised, and the holding there meets with our approval. See. also, De Hoyes v. G. H. & S. A. Ry. Co., 52 Tex. Civ. App. 543, 115 S. W. 75.

This disposes of all the assignments of error found in plaintiff in error's brief, and from what we have said above it follows that this court is of the opinion that none of them should be sustained, and that the trial court's judgment should be in all things affirmed; and it will be so ordered.