**SKELLY OIL COMPANY, Appellant,**

v.

**Mrs. Richard E. CARTER et al., Appellees.**

**No. 3542.**

Court of Civil Appeals of Texas.

Waco.

July 31, 1958.

Rehearing Denied Sept. 10, 1958.

Vinson, Elkins, Weems & Searls, B. Jeff Crane, Jr., Houston, Gayle M. Pickens, Tulsa, Okl., Arthur Harris, Bay City, for appellant.

Hill, Brown, Kronzer & Abraham, Houston, Bell, Camp & Gwin, Bay City, for appellees.

McDONALD, Chief Justice.

This is a suit for damages, for the death of Richard E. Carter, brought by his surviving widow as plaintiff, for herself, and

for the three surviving minor children of deceased, against the Skelly Oil Company as defendant. Deceased was an employee of Skelly Oil Company, and on 15 August 1955, while working in the course and scope of his employment, undertook to remove a unibolt coupling from a heater which constituted a portion of the equipment used by defendant to produce gas on the Carrie Labay Lease in Colorado County, Texas. Because gas was confined under pressure in that portion of the heater, when Carter loosened the unibolt device, either a part of the unibolt or the gas was propelled against Carter's body, inflicting upon him injuries from which he died 26 days later.

The case does not fall within the purview of the Texas Workmen's Compensation Law, Vernon's Ann.Civ.St. art. 8306 et seq., since defendant Skelly Oil Company had elected not to comply therewith.

Trial was to a jury, which found that Skelly Oil Company failed to have a pressure gauge present on the casing side of the heater, that such failure was negligence, and such negligence was a proximate cause of Carter's injuries and resulting death. The jury answered other issues acquitting defendant Skelly Oil Company of other acts of negligence, found the deceased was negligent in several respects, but failed to find that any act of negligence on the part of the deceased constituted the sole proximate cause of the occurrence. The jury found that $65,752 would compensate plaintiffs for the loss of their husband and father. Based on the jury's verdict, the Trial Court rendered judgment for plaintiffs in such amount.

Defendant appeals on 17 points, which present four basic contentions:

1) The Trial Court erred in rendering judgment against Skelly on the basis of the answers to issues 1, 2 and 3 (finding Skelly did not have a pressure gauge on the heater, that such was negligence, and a proximate cause of deceased's injuries and death), because there is no evidence

that Skelly had any duty to place a pressure upon the gas heater at the time and upon the occasion in question;

2) That the answers to issues 1, 2 and 3 are in conflict with the answers to issues 33, 34, 43 and 44;

3) That the Trial Court erred in not submitting to the jury certain issues requested by defendant Skelly Oil Company;

4) That the Trial Court erred in overruling defendant Skelly's objections to questions concerning certain payments made to deceased and to his surviving widow.

We revert to defendant's first contention—that the Trial Court erred in rendering judgment for plaintiffs on the basis of the jury's answers to issues 1, 2 and 3 (finding Skelly did not have a pressure gauge on the heater, that such was negligence, and a proximate cause of deceased's injuries and death), because there is no evidence that Skelly had any duty to place a pressure gauge upon the heater at the time and place in question. The gist of defendant's contention here is that Carter was experienced in oil field work, knew, or could have known, the heater was under pressure and, as such, dangerous, and that a pressure gauge would have given him no additional information or warning; that Carter knew all there was to know; that the liability of a master cannot be based on the failure to warn where he has no duty to give a warning or where the servant has knowledge of the danger. Defendant further contends that Carter could have secured a gauge and placed it on the line if he had wanted to, and that any duty on their part to provide a gauge would have been met by Carter placing the gauge. The record reflects that Carter was a roustabout with some 4 years 9 months experience with Skelly; that he had done normal roustabout work, but that he had had no experience with the production of high pressure gas from a dually completed well, through a split coil heater, utilizing a glycol unit, which was a complicated piece of ma-

chinery as far as Carter and the Skelly Oil Company employees in the area were concerned. It was the only glycol unit in the Bay City District. It was the only dually completed gas well. It was the only split coil heater on which deceased had worked. No employee of Skelly was familiar with the production system. For no apparent reason, other than his availability, deceased was sent to the Carrie Labay Lease to operate this novel system. This he was unable to do and trouble ensued. The glycol unit would not function. Several men from National Tank Company, who sold the unit to Skelly, came to the Lease to work on it. Finally an engineer from National Tank came to work on the unit. He suggested the difficulty was inside it and that operation must cease to allow repairs.. Carter closed all four of the plug valves at the heater and someone closed the valves at the sales line. This trapped gas pressure in different parts of the system. The heater had two lines. It was equipped with a pressure gauge on the line on the left side. There was a place on the right side of the heater for a gauge pertaining to production on that side but no gauge was there. Deceased removed the choke on the left side of the heater where the gauge was present and registering zero. He removed same without incident. Deceased then began removing the unibolt device from the casing on the right side of the heater, where there was no pressure gauge. In removing the device the trapped pressure caused the injuries from which Carter died. The evidence reflects that it is customary to have gauges on heaters to warn of high pressure; experienced oil field men testified that they had never seen a heater without adequate gauges; oil field men rely on gauges; there was a place for a gauge on the right side of the heater; a gauge is a simple and inexpensive device to provide; and such gauge, if it had been there, would have been directly in front of Carter.

■ We think the Trial Court properly submitted the issue of whether the defend-ant failed to provide the pressure gauge in question, whether such failure was negligence, and a proximate cause of Carter's injuries; and that the jury's answers to such issues are amply sustained by the record.

As heretofore noted, the jury further found that Carter was guilty of certain acts of contributory negligence, but that none constituted the sole proximate cause of the occurrence.

■ Being a non-subscriber to the Workmen's Compensation Act of this State, defendant is not afforded the defenses of contributory negligence and assumed risk. Defendant's only defense is to be free of negligence proximately causing an employee's injury. We think that defendant's contentions, and the cases cited in support thereof, relate either to the contributory negligence or to the risks which Carter had assumed, neither of which avails defendant relief, since it was a non-subscriber to the Workmen's Compensation Act. It is our view that the issue of negligence in not providing a pressure gauge (as well as the subsidiary issues 2 and 3) was properly submitted by the Trial Court, and the answers to the foregoing issues have ample support in the evidence, which, among other matters, shows that the deceased was sent to operate a novel, complicated, and dangerous system, and that in the performance of this work he was not provided the simple and inexpensive pressure gauge which is a usual, customary, and accepted appliance for such work.

■ Defendant's second complaint is that the answers to issues 1, 2 and 3 conflict with the answers to issues 33, 34, 43 and 44. As noted, issues 1, 2 and 3, and the jury's answers thereto, were to the effect that defendant failed to provide a pressure gauge on the casing side of the heater, that such. was negligence, and a proximate cause of Carter's injuries. Issues 33 and 34, and the jury's answers thereto, are to the effect that immediately

prior to the occurrence certain valves on the heater were at an "open" position and that from such Carter knew, or should have known, that gas pressure was present in the heater. Issues 43 and 44, and the jury's answers thereto, are to the effect that immediately prior to the occurrence pressure gauges were available for Carter's use, but that Carter did not get a gauge and place it on the tank. We fail to perceive where these issues are in conflict with issues 1, 2 and 3. Issues 1, 2 and 3 convict defendant of negligence. Issues 33, 34, 43 and 44 relate to contributory negligence on the part of plaintiff, which defense is not available to defendant. The test as to whether issues are in conflict is whether one set of issues require a judgment in favor of one party—and the issues asserted to be in conflict require a judgment in favor of the other party. Little Rock Furniture Mfg. Co. v. Dunn, 148 Tex. 197, 222 S.W.2d 985; Luther Transfer & Storage, Inc., v. Walton, Tex., 296 S.W.2d 750. Issues 1, 2 and 3 require a verdict for plaintiff. Issues 33, 34, 43 and 44 do not require a verdict for defendant, since these issues relate to contributory negligence and defendant has not obtained a necessary finding that such negligence was the sole proximate cause of the occurrence.

▪ Defendant's third contention relates to the refusal of the Trial Court to submit certain defensive issues requested by Skelly Oil Company.

Defendant requested the Trial Court to submit issues inquiring if:

1) Carter opened the unibolt coupling on the right side without giving the gas on the right side of the heater a chance to escape, and whether such was negligence, and a sole proximate cause of the occurrence;

2) If Carter opened the unibolt coupling on the right side of the heater without first ascertaining if there was pressure in the right side of the heater, and whether such was negligence, and a sole proximate cause of the occurrence.

The Trial Court refused to submit such issues but did submit issues (1) inquiring if Carter knew, or should have known, of the gas pressure before he opened the unibolt coupling, and whether such was negligence and was a sole proximate cause of the occurrence; and (2) inquiring as to Carter's knowledge of the pressure by the position of the valves (together with negligence and sole proximate cause); and (3) issues of opening the unibolt coupling without first bleeding the gas from the line.

We think the Trial Court submitted every theory of Carter's ascertaining the pressure of the gas and was under no obligation to submit the requested issues which are but shades and indistinguishable variations of that which was in fact submitted.

▪ Defendant's last contention is that the Trial Court erred in admitting into evidence the fact that following the injury defendant paid plaintiff $50 on August 23, and $50 on September 7. The universally recognized law of admissions is that any act or conduct of a party which may fairly be interpreted as inconsistent with his contentions at the time of trial may be shown in evidence. It is certainly inconsistent for an employer to commence voluntary unearned payments to plaintiffs following an injury and then claim in court that plaintiffs take nothing. Perhaps defendant had an explanation of the inconsistency, but in the absence of any explanation the inconsistency was properly to be considered by the jury. Further to the foregoing, we think the matter complained of, if error, to be harmless under Rule 434, Texas Rules of Civil Procedure. See Cloud v. Zellers, Tex., 309 S.W.2d 806; Condra Funeral Home v. Rollin, Tex., 314 S.W.2d 277.

It follows that all of defendant's points, and the contentions made thereunder, have been carefully considered and are over-ruled.

The judgment of the Trial Court is affirmed.

HALE, J., took no part in the consideration and disposition of this case.