Gary LAWRENCE, et ux., Martee
Lawrence, Petitioners,

v.

CDB SERVICES, INC., Respondent.

Danny Lee Lambert and Teresa Lam-
bert, individually, and as next friends
of R.L., and R.L., Petitioners,

v.

Affiliated Foods, Inc., Respondent.

Nos. 00–0142, 00–0201.

Supreme Court of Texas.

Argued Oct. 2, 2000.

Decided March 29, 2001.

Brian Paul Heinrich, Coleman Young, Robert L. Templeton, Templeton Smithee Hayes Fields Young & Heinrich, Amarillo, for Petitioners.

S. Tom Morris, Gibson Ochsner & Adkins, Amarillo, for Respondent CDB Services, Inc.

Lewis Coppedge, Christopher Wayne Weber, Connant Whittenburg & Schacter, Amarillo, G. Luke Ashley, Thompson & Knight, Dallas, for Respondent Affiliated Foods, Inc.

Justice O'NEILL delivered the opinion of the Court, joined by Justice HECHT, Justice ENOCH, Justice OWEN, Justice ABBOTT, and Justice HANKINSON.

In these consolidated cases, employees of nonsubscribers to workers' compensation insurance under the Texas Workers' Compensation Act voluntarily elected to participate in employer benefit plans that provide injured employees specified benefits in lieu of common-law remedies. We must decide whether the Workers' Compensation Act prohibits voluntary pre-injury agreements of this type and, if not, whether we should hold them void on public policy grounds because they undermine the Legislature's workers' compensation scheme. In *Lawrence v. CDB Services, Inc.*, we must also decide whether the waiver signed by the employee meets the express-negligence and fair-notice tests.

We discern no clear legislative intent to prohibit agreements such as those presented here. Although the parties and various *amici* have raised numerous fact-intensive public policy considerations favoring both sides of the issue, we believe these policy choices are best resolved by the Legislature. Absent any clear indication of legislative intent to prohibit such agreements, we decline to hold them void on public policy grounds. Finally, we hold that the waiver Lawrence executed satisfies the fair-notice and express-negligence tests. Accordingly, we affirm the court of appeals' judgments upholding summary judgments in favor of the employers. 16 S.W.3d 35, 20 S.W.3d 1.

I

### A. *Lawrence v. CDB Services, Inc.*

At all times relevant to these proceedings, CDB Services was a nonsubscriber under the Texas Workers' Compensation Act. Instead of opting into the statutory workers' compensation scheme, CDB adopted an employee benefit plan that provides medical disability, dismemberment, and death benefits for its eligible employees who choose to participate in the plan. On his first day of employment with CDB, Gary Lawrence signed an election to participate in the plan. That election provided:

> By executing this document, I voluntarily elect to participate in the CDB SERVICES, INC.'S EMPLOYEE BENEFIT PLAN AND TRUST (the "Plan"). According to the Plan, I agree that by accepting benefits under the Plan or executing this election form indicating an election to participate in the Plan:
>
> * I agree to the Plan's terms.
> * I waive any right I may have to recover from CDB Services, Inc. (the "Employer"), or any of its Affiliated Employers, directors, officers, shareholders, employees, and agents for injuries I sustain or for my death if they arise out of and within the

course and scope of my employment with Employer or any Affiliated Employers.

. * I acknowledge that, if I am injured or killed in the course and scope of my employment, my only relief against Employer or any of its Affiliated Employers, directors, officers, shareholders, employees, and agents will be to receive the benefits provided by the Plan.

**I understand that by electing to participate in the Plan, I will lose any right that I may have had to sue Employer or any of its Affiliated Employers, directors, officers, shareholders, employees, and agents because of any injuries, illness, or death I sustain in my employment with Employer or any of its Affiliated Employers resulting from their negligence or any other conduct actionable under the common law of the State of Texas, the statutes of the State of Texas, or under any otherwise available equitable relief. My only remedy will be to pursue benefits under the Plan. Executing this election involves the waiver and release of valuable legal rights.**

(Bold-face in original). The election further recites that (1) Lawrence did not sign the election under duress, (2) he received a summary plan description, (3) no person made any representation to him on behalf of CDB or its affiliated employers that influenced him to sign the election, (4) Lawrence signed the election of his own free will, (5) he had the option of seeking professional advice before executing the election and had consulted an attorney to the extent he deemed necessary, and (6) he understood the language in the election. Lawrence does not claim that he was forced to sign the election under duress or that his decision to participate in the plan was anything other than voluntary.

Less than a month after signing the election, Lawrence was injured on the job. He began receiving benefits under the CDB plan, and the record reflects that those benefits have continued. About seven months after he was injured, Lawrence sued CDB alleging that his injury was caused by CDB's negligence and negligence per se. CDB moved for summary judgment on the basis of waiver, election of remedies, release, and estoppel by acceptance of benefits. The trial court granted the motion, and the court of appeals affirmed, holding that the employee's waiver did not violate any public policy expressed in the Workers' Compensation Act. 16 S.W.3d at 44.

### B. *Lambert v. Affiliated Foods, Inc.*

Affiliated Foods, Inc., a nonsubscriber to the workers' compensation insurance program, employed Danny Lee Lambert in May 1992. Although Affiliated did not have workers' compensation coverage, it had an employee disability plan that provided certain medical, disability, and death benefits to injured employees who agreed to release and waive any claims against their employer. The waiver recited:

**I UNDERSTAND THAT BY EXECUTION OF THIS DOCUMENT, I WILL LOSE THE RIGHT TO SUE AFFILIATED FOODS, INC. AND PEOPLE EMPLOYED BY IT IN CONNECTION WITH INJURIES, ILLNESS OR DEATH SUSTAINED IN MY EMPLOYMENT WITH AFFILIATED FOOD, INC. AS A RESULT OF ITS OR THEIR NEGLIGENCE OR OTHER ACTIONABLE CONDUCT. MY ONLY REMEDY WILL BE TO BENEFITS UNDER THE PLAN.**

. . .

**EXECUTION OF THIS DOCUMENT INVOLVES THE WAIVER AND RE-**

**LEASE OF VALUABLE LEGAL RIGHTS.**

(Bold-face in original). The election also recites that (1) Lambert executed the document voluntarily and without duress, (2) no representation by Affiliated induced him to execute the document, (3) he carefully read and understood the document, (4) he signed the document of his own free will and with knowledge of the consequences, and (5) he had consulted an attorney to the extent he deemed necessary. Like Lawrence, Lambert does not claim that his election was in any way forced upon him or was not voluntary.

Almost nine months after he signed the waiver, Lambert was injured on the job. He received more than $57,000 in benefits before suing Affiliated for negligence and gross negligence. Affiliated moved for summary judgment, arguing that: (1) Lambert had waived and released his claims by signing the election; (2) he had ratified the waiver by accepting benefits under the plan; and (3) he was estopped from suing Affiliated because he had accepted plan benefits. The trial court granted Affiliated's motion. The court of appeals affirmed, holding that the election was not void as against public policy. 20 S.W.3d at 6–7.

### C. Other Cases

These two cases are not the only ones to present the issue before us today. Recently, in *Wolfe v. C.S.P.H., Inc.*, 24 S.W.3d 641 (Tex.App.—Dallas 2000, no pet.), the Fifth Court of Appeals held that voluntary pre-injury participation by a nonsubscriber's employee in an employer benefit plan in exchange for a waiver of the right to sue was neither prohibited by the Workers' Compensation Act nor contrary to public policy. On the other hand, in *Reyes v. Storage & Processors, Inc.*, 995 S.W.2d 722, 729 (Tex.App.—San Antonio 1999, pet. denied), the Fourth Court of Appeals held that an employee's agreement to waive all claims for on-the-job injuries in exchange for employer-provided benefits was void on public policy grounds because the employer's benefits were inferior to those provided under the workers' compensation statute. The Third Court of Appeals followed the *Reyes* court's reasoning in *Castellow v. Swiftex Mfg. Corp.*, 33 S.W.3d 890 (Tex.App.—Austin 2000, no pet.), holding that the employee's waiver of common law rights was unenforceable because the benefits offered under the employer's plan were inferior to statutory workers' compensation benefits. We granted these petitions to resolve this conflict among the courts of appeals.

## II

### A. No Prohibition under the Act

■ Petitioners argue that section 406.033 of the Workers' Compensation Act prohibits their nonsubscribing employers from asserting waiver as a defense. That section provides:

(a) In an action against an employer who does not have workers' compensation insurance coverage to recover damages for personal injuries or death sustained by an employee in the course and scope of the employment, it is not a defense that:

(1) the employee was guilty of contributory negligence;

(2) the employee assumed the risk of injury or death; or

(3) the injury or death was caused by the negligence of a fellow employee.

(b) This section does not reinstate or otherwise affect the availability of defenses at common law, including the defenses described by Subsection (a).

(c) The employer may defend the action on the ground that the injury was caused:

(1) by an act of the employee intended to bring about the injury; or

(2) while the employee was in a state of intoxication.

(d) In an action described by Subsection (a) against an employer who does not have workers' compensation insurance coverage, the plaintiff must prove negligence of the employer or of an agent or servant of the employer acting within the general scope of the agent's or servant's employment.

TEX. LAB.CODE § 406.033.

Petitioners contend that the Act prohibits their employers from asserting waiver as a defense because section 406.033(c) contains an exclusive list of defenses available to nonsubscribers and does not mention waiver. By enforcing their waivers, petitioners contend, we would be adding a defense not allowed by the statute. Alternatively, they argue that their waivers essentially require them to assume the risk of their own injuries and thus violate section 406.033(a)(2). Petitioners cite a number of cases to support their positions, but none addresses the precise situation presented here.

For example, petitioners cite *Kroger v. Keng*, 23 S.W.3d 347, 349 (Tex.2000), to support their argument that the Act abolishes all common-law defenses except those enumerated in section 406.033(c). But our decision in *Kroger* was not so broad; we held that a nonsubscribing employer could not submit a comparative-fault issue because the issue necessarily required a threshold determination that the employee's negligence was a contribut-

ing cause of the injury, which the Legislature expressly prohibited. *Kroger*, 23 S.W.3d at 347. Permitting submission of the employee's comparative fault would be contrary to the Legislature's clear intent that "an employee's fault would neither defeat nor diminish his or her recovery." *Id.* at 352.

In contrast, the statute reveals no clear legislative intent to preclude an employer from asserting the affirmative defense of waiver. There is, admittedly, some tension between the enumeration of prohibited defenses in section 406.033(a) and the list of available defenses identified in section 406.033(c); both lists cannot be exclusive. That the employers also rely on section 406.033 highlights this tension. They emphasize subsection (a), which lists defenses that are not available to a nonsubscriber. Because the defense of waiver is not specifically prohibited, they contend that our failure to allow this defense would be adding a prohibited defense to the statute.

We do not believe that the Legislature's purpose in enacting subsection (c) was to provide an exhaustive list of defenses available to nonsubscribers. Instead, by enacting subsection (c), the Legislature clearly indicated that it did not intend subsection (a), which lists defenses based on an employee's (or fellow employee's) fault that would otherwise defeat or diminish recovery, to protect employees injured as a result of their own intoxication or their own intent to bring about the injury.[1] But for the exceptions expressly identified in subsection (c), subsection (a)'s prohibition of the contributory negligence defense might arguably prevent an employer from asserting as a defense its employee's intoxication or intent to cause the injury. Unlike the comparative-fault issue in *Kroger*,

---

1. Neither is an employee of a subscriber entitled to compensation if the employee was intoxicated or wilfully caused his or her own injury. *See* TEX. LAB.CODE § 406.032.

the contractual waivers before us today do not implicate the employees' fault and are therefore not clearly within section 406.033's purview. If the Legislature had intended section 406.033(c)'s defenses to be exclusive, or section 406.033(a)'s prohibited defenses to be broader, it could have easily said so. The waiver defense is simply not addressed in section 406.033, either as a prohibited or a permitted defense.

To support their contention that subsection (c)'s defenses are exclusive, petitioners rely in part on our statement in *Texas Workers' Compensation Commission v. Garcia* that the Act "abolish[ed] *all the traditional common law defenses* for subscribers." 893 S.W.2d 504, 511 (Tex.1995) (emphasis added). But that statement, albeit broad, must be read in context. It appears in our discussion of the Act's history, and follows a paragraph in which we identified the specific defenses—contributory negligence, assumption of the risk, and fellow servant—that employers had routinely invoked to defeat injured employees' claims before the Act's passage. *See id.* We discouraged reliance on this *dicta* in *Kroger*, emphasizing that *Garcia* dealt with an open-courts challenge to the Act, not section 406.033's scope or interpretation. 23 S.W.3d at 352. We did not intend in *Garcia* to suggest that section 406.033(c) eliminated every conceivable defense in suits against nonsubscribers. While the petitioners cite several courts of appeals decisions also broadly stating that a nonsubscribing employer's only defense is to show that the employer was not negligent, those decisions generally involve attempts to submit defensive legal theories that were necessarily foreclosed as a result of the Act's express prohibitions, like the comparative-fault defense in *Kroger*. *See Brookshire Bros., Inc. v. Wagnon*, 979 S.W.2d 343, 347 (Tex.App.—Tyler 1998, no writ); *Potter v. Garner*, 407 S.W.2d 537, 541 (Tex.Civ.App.—Tyler 1966, writ ref'd

n.r.e.); *Skelly Oil Co. v. Carter*, 316 S.W.2d 87, 90 (Tex.Civ.App.—Waco 1958, no writ); *Sears, Roebuck & Co. v. Robinson*, 272 S.W.2d 549, 552 (Tex.Civ.App.—Beaumont 1954), *aff'd*, 154 Tex. 336, 280 S.W.2d 238 (Tex.1955).

Petitioners next argue that enforcing their waivers would be inconsistent with section 406.033(a)(2), which prohibits a nonsubscriber from asserting an assumption-of-the-risk defense, and with at least two of our decisions that prohibited an employer from shifting liability for job-related injuries and safety to the employee, *Barnhart v. Kansas City, Mexico & Orient Railway Co. of Texas*, 107 Tex. 638, 184 S.W. 176 (1916), and *Clevenger v. Burgess*, 31 S.W.2d 675 (Tex.Civ.App.—Beaumont 1930, writ ref'd). But section 406.033(a)(2) does not speak to an employee's voluntary agreement to waive common-law claims against an employer in exchange for prescribed benefits. Rather, it precludes an employer from asserting that an employee's negligence claim is barred because the employee voluntarily exposed him- or herself to a danger inherent in the work. *See Farley v. M M Cattle Co.*, 529 S.W.2d 751, 758 (Tex.1975). And in *Barnhart*, we merely held that an employer may not require an employee to agree to assume the risk of an on-the-job injury as a condition of employment. *Barnhart*, 184 S.W. at 179. *Clevenger* is similarly inapposite. There, the nonsubscribing employer had paid his injured employee an extra dollar per day over his regular wages, which the employer contended was sufficient to allow the employee to insure himself against work-related injuries. The employer claimed that, by accepting the additional pay, the employee assumed the risks ordinarily incident to the work he was doing and the employer had the right to plead all defenses available under the common law. *Clevenger*, 31

S.W.2d at 676. The record contained no evidence of the waiver agreement, if in fact there was one, because neither party disputed that any such agreement was inadmissible under the version of the Act then in effect.[2] Rather, the employer claimed the Workers' Compensation Act unduly interfered with his right to contract and was therefore unconstitutional. We upheld the Act's constitutionality, stating that "[t]he constitutional right to contract is not infringed by forbidding contracts whereby employers relieve themselves of liability imposed by statute." *Id.* at 678. Once again, *Clevenger* involved a unilateral action by the employer that appears to have been a condition of employment, and did not involve an employee's voluntary election of employer-provided benefits. *Id.* *Hazelwood v. Mandrell Industries,* another case Petitioners cite, also involved an agreement that was a condition of an employment contract and is similarly distinguishable. 596 S.W.2d 204, 205 (Tex.Civ. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.).

In this case, it is undisputed that neither Lawrence nor Lambert was required to release his common-law claims as a condition of employment. They were free to decline their employers' plans, retain their employment, and retain the right to sue for negligent injury, with the inherent risks and uncertainty that might involve. Nor do the employers' plans shift the risk of on-the-job injuries to the employees; they provide immediate and certain benefits the employers are not otherwise required to provide in exchange for a voluntary relinquishment of the right to sue.

This distinction is significant. As one federal court, interpreting Texas law, has stated:

> The distinction between an employment contract that requires a prospective employee, as a condition to receipt or retention of employment, to agree to limit the employer's liability, on one hand, and a voluntary occupational insurance plan, in which the employee has the option to enroll in consideration for agreeing that such plan constitutes the exclusive remedy for job related injuries, on the other, is decisive.

*Brito v. Intex Aviation Servs., Inc.,* 879 F.Supp. 650, 654 (N.D.Texas 1995). The court noted that, as here, the employee had a choice of whether to enroll in the plan, and his employment status would be unaffected by that choice. *Id.* n. 4. If he chose to enroll, the employee was not required to prove his employer's negligence to receive benefits for job-related injuries. *Id.* If he chose not to enroll, he retained his right to recover from his employer without having to overcome his employer's common-law defenses. *Id.* Accordingly, the court concluded, "the main purpose of the Act, to protect and benefit the employee, is not contravened by the existence of the plan and its concomitant waiver." *Id.*

In sum, we find the Act itself does not expressly prohibit the elections signed by Lawrence and Lambert. Thus, we must enforce them as we would any other contract unless they should be held void on public policy grounds because they contravene the workers' compensation scheme.

---

2. All parties agreed that evidence of the purported agreement was inadmissible under the statutory predecessor to section 406.035 of the current Act, which provides that "an agreement by an employee to waive the employee's right to compensation is void." Several courts have since held that section 406.035 of the 1989 Act does not apply to nonsubscribers' employees, *see, e.g., Reyes,* 995 S.W.2d at 726, and *Martinez v. IBP, Inc.,* 961 S.W.2d 678, 682 (Tex.App.-Amarillo 1998, pet. denied), and neither Lawrence nor Lambert argue that section 406.035 renders their waivers unenforceable.

## B. Public Policy Concerns

■ Petitioners argue that enforcing their elections would contravene the workers' compensation scheme because their employers would then enjoy the benefits the Act bestows upon subscribers without having to provide their employees equivalent statutory benefits. The courts of appeals in *Reyes* and *Castellow* agreed, holding that such waivers violate public policy when the employer-provided benefits are more limited than those provided by workers' compensation insurance. *Reyes,* 995 S.W.2d at 729; *Castellow,* 33 S.W.3d at 901. Those courts engaged in a substantive comparison of the respective benefits and concluded that the employer-provided benefits were inferior to those provided under the Act and were therefore void.

We believe that courts engaging in such a qualitative, plan-by-plan evaluation is ill-advised. First, such an analysis is premised on the questionable presumption that the various benefits can in fact be compared. In *Lambert v. Affiliated Foods, Inc.,* 20 S.W.3d 1 (Tex.App.—Amarillo 1999) for example, the employer's plan provides coverage for nonoccupational injuries, a benefit not conferred by the Act and one that an employee might consider far more valuable than other statutory benefits. On the other hand, several *amici* argue that employers can never offer a combination of benefits and rights equivalent to what the Act intends because employees of nonsubscribers are not protected from an employer's or its insurer's potential insolvency to the extent that employees receiving workers' compensation benefits are. TEX. INS. CODE art. 21.28–C, § 5(8). And, they claim, such waivers generally purport to deprive an employee's survivors of their right to seek exemplary damages for an employee's death caused by an employer's gross negligence, which is preserved un-

der the Act. *See* TEX.LAB.CODE § 408.001. These arguments highlight the difficulties inherent in quantifying and measuring such intangible benefits. Indeed, the court of appeals in *Lambert* concluded that the employer's plan was "not capable of comparison" with the statutory workers' compensation plan. 20 S.W.3d at 7.

In addition, deciding whether one set of benefits is substantially equivalent to another presents a number of practical concerns. For instance, Lambert's employer claims its package of benefits in fact affords broader coverage than workers' compensation insurance because, among other things, it covers nonoccupational injuries. Lambert, on the other hand, contends that his employer's plan does not provide benefits equal to those offered under the Act because, among other things, it does not provide for lifetime medical benefits. Assuming that different benefits such as these are even capable of comparison, should expert economic testimony regarding the relative equivalency of benefits be presented in each case? And who should decide—judge or jury? Hinging the validity of employer-provided plans upon a comparative-equivalency analysis fosters unpredictability of outcome and undermines judicial economy. But more importantly, weighing the substantive equivalency of employer-provided benefits involves competing policy considerations that courts are ill-equipped to address. Because the Act itself provides no clear guidance on this issue, we believe the balance must be drawn by the Legislature.

Petitioners argue that we should declare these waivers void because they undermine the Act's general scheme; if employee waivers such as these are not prohibited, they argue, employers will have no incentive to subscribe to workers' compensation insurance and the system established under the Act will be crippled. It is

true that the Act discourages employers from choosing nonsubscriber status by abolishing their common-law defenses of contributory negligence, assumption of the risk, and fellow servant. *See* TEX.LAB. CODE § 406.033; *Kroger*, 23 S.W.3d at 349. On the other hand, from its inception, participation in the Act has been voluntary. *See* TEX. LAB.CODE § 406.002(a); *Middleton v. Tex. Power & Light Co.*, 108 Tex. 96, 185 S.W. 556, 558 (1916). Unlike workers' compensation laws in every other state, the Texas Act allows employers to choose whether to become a subscriber. *See* TEX. LAB.CODE § 406.002; RESEARCH AND OVERSIGHT COUNCIL ON WORKERS' COMPENSATION, CONTROVERSY OVER THE EFFECT OF WAIVERS USED BY NONSUBSCRIBERS, TEXAS MONITOR, 5:1 (Spring 2000). Employees, too, have a choice under our statutory scheme. Employees of subscribing employers may choose to opt out of the system and retain their common-law rights in the event they are injured on the job. TEX.LAB.CODE § 406.034(b). Thus, our Legislature has decided to make participation in the workers' compensation system voluntary and elective as to both employer and employee. *See Paradissis v. Royal Indem. Co.*, 507 S.W.2d 526, 529 (Tex.1974). Allowing employees of nonsubscribers additional choices does not in itself violate the legislative scheme.

In addition to the policy concerns raised by Petitioners, several *amici* have weighed in both supporting and opposing these waivers on numerous, competing public policy grounds.[3] Those opposing the waivers argue that the waivers violate public policy by allowing employers to escape liability by offering benefits that are inherently inferior because benefits may be provided by entities that are unregulated and that may become insolvent. At the same time, they argue, these plans are not subject to the protective mechanisms that the Act provides to ensure that claims disputes are fairly resolved, do not protect workers from being terminated for filing claims, and often do not allow injured employees to freely choose their treating physicians. They also contend that the waivers are not generally truly voluntary because workers feel compelled to sign them.

*Amici* supporting waivers, on the other hand, raise a number of countervailing policy concerns. They contend that allowing waivers will result in increased benefits for injured employees, and that insurance from a number of financially strong companies is available to provide those superior benefits. They cite statistics suggesting that few subscribers will be influenced to leave the workers' compensation system if the waivers are upheld, and contend that benefits currently offered under some plans will be reduced if the waivers are struck down. They claim that waivers such as these have been used by employers for years, and that invalidating them will upset the status quo. And, they argue, there is no evidence that waivers have been or will be used abusively. To the contrary, employees who decide to sign waivers are actually exercising an informed, intentional choice. These *amici* claim that traditional contract defenses, as well as the Employee Retirement Income Security Act of 1974, protect employees from employers using waivers abusively.

---

**3.** *Amici* opposing waivers include the Texas Workers' Compensation Insurance Fund, the Texas Medical Association, the Insurance Council of Texas, the Texas AFL CIO, and Senator Robert Duncan. *Amici* supporting waivers include the Texas Association of Business and Chambers of Commerce, HCA the Healthcare Company, St. Joseph Regional Healthcare, Texas Risk Retention Association, the Texas Association of Residential Care Communities, and H.E. Butt Grocery Co.

To these policy concerns, we add another: We do not know how many injured employees in Texas are currently receiving benefits provided by their employers under similar plans. Several *amici* suggest that there are a significant number. Were we to invalidate such plans on public policy grounds, these employees might lose their benefits yet no longer be able to assert common-law claims because of limitations problems.

We recognize that the Legislature designed the workers' compensation scheme to encourage employer participation. *See, e.g., Kroger,* 23 S.W.3d at 350; *Garcia,* 893 S.W.2d at 511. We also recognize that enforcing waivers like those presented today might discourage employer participation in the workers' compensation system and present the problems articulated by some of the *amici.* But, while the Legislature has created statutory incentives to encourage participation, participation remains voluntary. As a judicial body, we are ill-equipped to evaluate the likely real-world consequences of invalidating the agreements before us.

Undoubtedly, the issue we face raises critical and complex public policy issues. And the administration of the workers' compensation system is heavily imbued with public policy concerns. *See James v. Vernon Calhoun Packing Co.,* 498 S.W.2d 160, 162 (Tex.1973) (quoting *Employers' Indem. Corp. v. Woods,* 243 S.W. 1085 (Tex. Comm'n App.1922, judgm't adopted)). At the same time, we have long recognized a strong public policy in favor of preserving the freedom of contract. *See Wood Motor Co. v. Nebel,* 150 Tex. 86, 238 S.W.2d 181, 185 (1951). Courts must exercise judicial restraint in deciding whether to hold arm's-length contracts void on public policy grounds:

> Public policy, some courts have said, is a term of vague and uncertain meaning, which it pertains to the law-making power to define, and courts are apt to encroach upon the domain of that branch of the government if they characterize a transaction as invalid because it is contrary to public policy, unless the transaction contravenes some positive statute or some well-established rule of law.

*Sherrill v. Union Lumber Co.,* 207 S.W. 149, 153–54 (Tex.Civ.App.—Beaumont 1918, no writ) (quoting 6 RULING CASE LAW § 119, at 710). Given the lack of any clear legislative intent to prohibit agreements like the ones before us, and absent any claim by the petitioners of fraud, duress, accident, mistake, or failure or inadequacy of consideration, we decline to declare them void on public policy grounds. We believe the factually-intensive, competing public policy concerns raised by the parties and by *amici* in these cases are not clearly resolved by the statute and are best resolved by the Legislature, not the judiciary.

### III

### Express Negligence/Fair Notice

Lawrence additionally argues that his release of claims against CDB is unenforceable because it does not meet the express-negligence or fair-notice tests. Lawrence's pre-injury release of claims against CDB for CDB's own negligence can be enforced only if it meets two fair notice requirements. First, the parties' intent that CDB was to be released from liability for CDB's own future negligence must be expressed in unambiguous terms within the four corners of the release. *See Littlefield v. Schaefer,* 955 S.W.2d 272, 274 (Tex.1997). Second, the releasing language must be "conspicuous." *Id.* Whether a release is conspicuous is a question of law. *Id.* Language that appears in contrasting type or in capitals satisfies the conspicuousness requirement. *Id.* at 274–

75. We agree with the court of appeals that CDB's election meets both the express-negligence and fair-notice requirements. *See Id.* at 274; *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex.1993); *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 707–08 (Tex. 1987).

## IV

### Conclusion

The Texas Workers' Compensation Act neither clearly prohibits nor clearly allows voluntary pre-injury employee elections to participate in nonsubscribing employers' benefit plans in lieu of exercising common-law remedies. And whether or not such elections should be held void on the theory that they contravene the general statutory scheme and thus violate public policy is a decision that we believe, absent clear legislative guidance and in light of numerous competing public policy concerns, is better left to the Legislature. Accordingly, we decline to invalidate the petitioners' elections on public policy grounds and affirm the court of appeals' judgments.

BAKER, J., filed a dissenting opinion, joined by PHILLIPS, C.J.

Justice BAKER, joined by Chief Justice PHILLIPS, dissenting.

For eighty-eight years workers' compensation legislation has provided a closely-monitored compensation scheme to encourage employers' participation in the workers' compensation system and to ensure all injured employees adequate redress. Today, by declining to invalidate the waivers at issue on public policy grounds, the Court ignores the Texas Workers' Compensation Act's statutory scheme and its established underlying public policies. Instead, the Court elects to defer to the Legislature to resolve what the Court implies—

properly calls "competing public policy concerns." 44 S.W.3d at 554. Because the Court's choice is contrary to the public-policy decision the Legislature has already made and embodied in the Act, I dissent.

### I.

### APPLICABLE LAW

#### A. THE WORKERS' COMPENSATION ACT

In 1913, the Texas Legislature enacted workers' compensation legislation "to meet the needs of an increasingly industrialized society." *Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 510 (Tex.1995). At the time, despite the rising number of workplace injuries, most employees were denied any recovery because it was difficult to establish workplace negligence and employers invoked complete common-law defenses, such as contributory negligence, assumption of the risk, and fellow servant, to bar negligence claims. *See Garcia*, 893 S.W.2d at 521. Consequently, the Legislature passed the first workers' compensation legislation with the "general purpose ... [of working] an important change in the law in regard to the liability of employers for personal injuries to their employees, or for death resulting from such injuries, and the compensation afforded therefor to employees or their beneficiaries." *Middleton v. Texas Power & Light Co.*, 108 Tex. 96, 185 S.W. 556, 558 (1916).

In 1989, the Legislature passed the Texas Workers' Compensation Act to resolve problems with existing legislation. *Garcia*, 893 S.W.2d at 511–14. However, the provisions governing compensation for injured employees have remained largely unchanged since the early 1900s. *See Kroger Co. v. Keng*, 23 S.W.3d 347, 349–50 (Tex. 2000) (describing workers' compensation legislation in 1913); *Garcia*, 893 S.W.2d at 521 (noting that the Act carries "forward

the general scheme of the former act"). Under the Act, an injured employee whose employer subscribes to workers' compensation insurance may recover statutorily-prescribed benefits without regard to the employer's fault or the employee's negligence. *See* TEX. LAB.CODE §§ 406.031, 406.033; *Kroger Co.*, 23 S.W.3d at 349. In exchange, the employee may not bring common-law claims against the subscribing employer. *See James v. Vernon Calhoun Packing Co.*, 498 S.W.2d 160, 162 (Tex. 1973) (stating that the Act "provides an exclusive remedy for those who accept its provisions"). Alternatively, an injured employee may retain the right to assert common-law claims against a subscribing employer if the employee timely elected in writing to waive workers' compensation insurance coverage. *See* TEX. LAB.CODE § 406.034(b). In those instances, the employer may raise all common-law defenses. *See* TEX. LAB.CODE § 406.034(d).

The Act also gives employers the option not to subscribe to workers' compensation insurance. *See* TEX. LAB.CODE § 406.002. Nonsubscribing employers' employees retain the right to bring personal-injury claims against their employers. *See* TEX. LAB.CODE § 406.033. In defending against such claims, however, a nonsubscribing employer loses all traditional common-law defenses. TEX. LAB.CODE § 406.033(a); *Kroger Co.*, 23 S.W.3d at 349; *Garcia*, 893 S.W.2d at 521. Thus, the Act encourages employers to subscribe and penalizes those who do not. *Kroger Co.*, 23 S.W.3d at 349–350.

## B. CONTRACTS AND PUBLIC POLICY

On several occasions, we have held otherwise freely-entered contracts void because they were contrary to public policy. *See, e.g., Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.*, 793 S.W.2d 660, 663 (Tex.1990) (unreasonable covenant not to compete); *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 680 (Tex.1990) (same); *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex.1984) (policy allowing insurer to avoid plane crash liability due to insured's technical breach); *Crowell v. Housing Auth. of Dallas*, 495 S.W.2d 887, 889 (Tex.1973) (lease provision waiving landlord's tort liability to tenant). In doing so, we recognized that the State expresses its public policy in its statutes. *See National County Mut. Fire Ins. Co. v. Johnson*, 879 S.W.2d 1, 5 (Tex.1993) (holding insurance policy with family-member exclusion void because it conflicts with public policy underlying Texas Motor Vehicle Safety–Responsibility Act); *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex.1985) (holding employment termination for refusal to perform illegal act contrary to public policy expressed in state and federal criminal laws). Thus, to determine whether a contract violates public policy, we consider the policies underlying any applicable statutes.

Whether a contract violates public policy is a question of law, which we review de novo. *Barber v. Colorado I.S.D.*, 901 S.W.2d 447, 450 (Tex.1995); *Insurance Co. of N. Am. v. Easton*, 73 Tex. 167, 11 S.W. 180, 181 (1889). Generally, if a contract violates public policy, it is void, not merely voidable. *See, e.g., Tom L. Scott, Inc. v. McIlhany*, 798 S.W.2d 556, 560 (Tex.1990) (holding agreement to redesignate opponent's expert witnesses ineffective ); *Continental Fire & Cas. Ins. Corp. v. American Mfg. Co.*, 221 S.W.2d 1006, 1009 (Tex. Civ.App.—Fort Worth 1949, writ ref'd) (explaining that it is "the law that contracts prohibited by statute, either expressly or impliedly, are void"). Estoppel and ratification doctrines will not make a contract that violates public policy enforceable. *See, e.g., Continental Fire & Cas. Ins. Corp.*, 221 S.W.2d at 1009 ("An illegal contract cannot be ratified by either par-

ty."); *Richmond Printing v. Port of Houston Auth.*, 996 S.W.2d 220, 224 (Tex. App.—Houston [14th Dist.] 1999, no pet.) ("As a general rule, void contracts cannot be ratified."); *Ex parte Payne*, 598 S.W.2d 312, 317 (Tex.Civ.App.—Texarkana 1980, no writ) ("Since the contract was void, neither party was bound thereby, and thus estoppel by contract could not arise in this case.").

## II.

## ANALYSIS

The Act provides a comprehensive compensation system with two methods by which employers can handle workplace injuries: (1) an employer may elect to provide workers' compensation insurance coverage, thereby barring an injured employee's common-law claims unless the employee timely elected to waive coverage; or (2) an employer may choose not to carry workers' compensation insurance, remain subject to an injured employees' common-law claims, and waive traditional common-law defenses. *See* Tex. Lab.Code §§ 406.031–.034, 406.002. The Legislature created the compensation system to encourage subscription and "delineate explicitly the structure of an employee's personal injury action against his or her nonsubscribing employer." *Kroger Co.*, 23 S.W.3d at 350–51.

In *Garcia*, this Court considered the Act's compensation scheme critical in resolving constitutional challenges to the statute. 893 S.W.2d at 523–24 (holding that the Act does not violate Texas' open courts guarantee because it assures that injured employees may either assert common-law claims or receive the Act's adequate substitute remedies). And, we have recognized that the Act does not arbitrarily abolish an employee's common-law claims because it substitutes a different but certain and adequate legal remedy for

the one that existed at common-law. *Lebohm v. City of Galveston*, 154 Tex. 192, 275 S.W.2d 951, 954 (1955); *see also Holmans v. Transource Polymers, Inc.*, 914 S.W.2d 189, 193 (Tex.App.—Fort Worth 1995, writ denied) ( "[T]he Workers' Compensation Act is an example of the legislature's reasonable substitute for common-law rights.").

Thus, a key concept in upholding the Act has been its providing injured employees of nonsubscribing *and* subscribing employers definite means by which they may seek adequate redress. Today, however, the Court allows employers an end-run around the Act's carefully-crafted system and improperly creates a third compensation method. This method allows employers to privately negotiate injured employees' compensation without considering whether the employer's benefits plan affords fewer benefits than under the Act or whether the employee relinquishes more remedies than the Act allows.

In concluding that the waivers in these cases do not violate public policy, the Court engages in an improper analysis. Rather than looking to the Act to ascertain Texas' public policy, *National County Mut. Fire Ins. Co.*, 879 S.W.2d at 5, the Court weighs what it labels as the parties' and amici's "competing public policy concerns." 44 S.W.3d at 554. But in reality, the Court is merely reciting the waivers' pros and cons and data compiled from a statewide employer survey-not the public policies the Act expresses.

This Court has previously identified the public policies underlying the Act. We have recognized, for example, that the Act manifests a strong legislative policy encouraging employers to subscribe to workers' compensation insurance. *Kroger Co.*, 23 S.W.3d at 350; *Garcia*, 893 S.W.2d at 511. And we have stated that the Legislature

passed the Act to benefit and protect employees. *See Fidelity & Cas. Co. v. McLaughlin*, 134 Tex. 613, 135 S.W.2d 955, 956 (1940) (recognizing that the "primary purpose of our Compensation Law is to protect our own workmen"); *Woolsey v. Panhandle Ref. Co.*, 131 Tex. 449, 116 S.W.2d 675, 678 (1938) (stating that the Act "was enacted principally to protect the employee"). Consequently, we "liberally construe the Workers' Compensation Act in favor of the injured worker." *Kroger Co.*, 23 S.W.3d at 349.

The Act's underlying public policies are also evident in cases where contracts have been held void as against public policy because they reduced injured employees' common-law and statutory rights. For example, this Court has held that a contract in which an employee expressly assumes the risk of workplace injury is "so abhorrent that it is held to be in violation of public policy and void." *Barnhart v. Kansas City, Mex. & Orient Ry. Co.*, 107 Tex. 638, 184 S.W. 176, 179 (1916). And a court of appeals has held that a contract limiting a nonsubscribing employer's liability to the amounts in the Act is void, because the employer did not waive its common-law defenses. *Hazelwood v. Mandrell Indus. Co.*, 596 S.W.2d 204, 206 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.); *see also Crowell*, 495 S.W.2d at 889 (recognizing, in a case in which we held that a lease provision exculpating a landlord from tort liability to tenants violates public policy, that "a contract exempting an employer from all liability for negligent injury of his employees in the course of their employment is void as against public policy"); *Clevenger v. Burgess*, 31 S.W.2d 675, 678 (Tex.Civ.App.—Beaumont 1930, writ ref'd) (rejecting nonsubscribing employer's argument that the Act unconstitutionally impairs freedom of contract if it invalidates an employee's agreement to assume the risk of injury).

It is already established, therefore, that the Act's underlying policies are to encourage workers' compensation insurance subscription while assuring nonsubscribing employers' injured employees a means to seek suitable compensation. Yet, the Court today refuses to hold these waivers unenforceable despite the Act's comprehensive compensation scheme and established public policies. Instead, the Court gives too much consideration to the parties' and amici's "factually-intensive" concerns, says the Legislature can better resolve these issues, and declines to hold the waivers invalid. 44 S.W.3d at 553. Surprisingly, the Court acknowledges that enforcing the waivers will discourage employer subscription to workers' compensation insurance—a fundamental policy expressed in the Act. *See Kroger Co.*, 23 S.W.3d at 350. But, rather than upholding the Act's underlying policies, the Court declines to take the appropriate action and defers to the Legislature in an area about which the Legislature and this Court have already clearly spoken.

The Court adds as an additional concern the possibility that invalidating the waivers may cause some employees to lose benefits while also losing their common-law claims because limitations has run. In doing so, the Court ignores the rule that "[i]n considering whether a contract is contrary to public policy, the test is whether the tendency of the agreement is injurious to the public good, not whether its application in a particular case results in actual injury." *Hazelwood*, 596 S.W.2d at 206 (citing 17 C.J.S. *Contracts* § 211; *Uvalde Const. Co. v. Shannon*, 165 S.W.2d 512, 513 (Tex.Civ. App.—Eastland 1942, no writ); *Amarillo Oil Co. v. Ranch Creek Oil & Gas Co.*, 271 S.W. 145, 151 (Tex.Civ.App.—Amarillo 1925, writ dism'd by agr.)).

In *Woolsey v. Panhandle Refining Co.*, for example, we held as unenforceable a

contract in which a subscribing employer promised an injured employee lifetime employment in exchange for his agreement not to file a workers' compensation claim. 116 S.W.2d at 678. We recognized that refusing to enforce the agreement may injure the plaintiff employee, but this result would be "far less disastrous to the great army of employees operating under this statute than to hold that under the law an employee and an employer can contract away the rights of the employee." *Woolsey,* 116 S.W.2d at 678; *see also James,* 498 S.W.2d at 162 (recognizing that invalidating a waiver may work a hardship on individual employee, but concluding it is in the working majority's best interest). Because the Act dictates that "the great army of employees" is best served by encouraging subscription while also assuring nonsubscribing employers' employees a means to seek adequate compensation, the Court should have no choice but to hold the waivers void and unenforceable.

The Court also finds it pertinent that employer and employee participation in the workers' compensation system is voluntary and says that allowing nonsubscribing employers' employees additional choices does not violate the legislative scheme. 44 S.W.3d at 551–52. This simply ignores that even when employers and employees elect not to have workers' compensation insurance coverage, the Act "delineate[s] explicitly the structure" of an injured employee's personal-injury action. *Kroger Co.,* 23 S.W.3d at 351. Enforcing these waivers is thus contrary to the Act's intent to protect both nonsubscribing and subscribing employers' employees and to monitor all injured employees' remedies.

Finally, because I would hold that the waivers violate public policy, I also consider the employers' argument that by accepting benefits under the plans, Lawrence and Lambert are estopped from claiming the waivers are unenforceable. While accepting benefits is a form of quasi-estoppel, *Lopez v. Munoz, Hockema & Reed,* 22 S.W.3d 857, 864 (Tex.2000), it does not apply where the agreement violates public policy and is thus void. *Ex parte Payne,* 598 S.W.2d at 317. And, generally, a party cannot ratify a void contract. *Richmond Printing,* 996 S.W.2d at 224. Accordingly, accepting benefits does not make the otherwise void waivers enforceable.

### III.

### CONCLUSION

An employee's agreement to waive all claims against a nonsubscribing employer violates the Act's long-recognized public policies. Today, the Court ignores its obligation to uphold those public policies and punts a well-settled issue to the Legislature. I respectfully dissent.