

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00452-CV

---

IN THE INTEREST OF K.S.G., A CHILD

---

On Appeal from the 286th District Court
Hockley County, Texas
Trial Court No. 22-07-26889, Honorable Pat Phelan, Presiding

---

March 19, 2024

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

Appellant, A.G., appeals from the trial court's order terminating his parental rights to his son, K.S.G.[1]  By two issues, he challenges the sufficiency of the evidence to support termination on the predicate grounds that he constructively abandoned his child and failed to comply with a court order for services to obtain the return of his child.  We affirm.

---

[1] The mother voluntarily relinquished her parental rights and entered into an agreement for visitation.  She is not a party to this appeal.

BACKGROUND

A.G. was incarcerated in January 2022 for possession of a controlled substance in a drug-free zone. He has a prior robbery conviction and has been in and out of custody for eight years. In July 2022, the Department received an intake that K.S.G.'s mother was in a motel room using methamphetamine in the presence of her two-month-old baby. The child was removed and placed with his maternal grandmother where he remained throughout the proceedings. The mother named several potential fathers who were eventually ruled out. By order signed on April 24, 2023, A.G. was determined to be the biological father.

In May 2023, the Department developed a family service plan for A.G. but due to an improper relationship with a prison guard, in July 2023, he was transferred to another penal facility. Because of the infraction, he was removed from general population and housed in isolation in medium custody for at least six months. His predicament precluded him from participating in most of the Department's required services.

After presentation of the evidence at the final hearing, the associate judge found the Department showed clear and convincing evidence to support termination of A.G.'s parental rights on the following grounds:

- constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department for less than six months and the Department has made reasonable efforts to return the child to the parent; the parent has not regularly visited or maintained significant contact with the child; and the parent has demonstrated an inability to provide the child with a safe environment; and

2

- failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child.

*See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N), (O).[2]  The associate judge also found termination was in the child's best interest.  § 161.001(b)(2).

A de novo hearing was held before the referring court.[3]  The issues for review specified by A.G. were the sufficiency of the evidence to support the grounds found by the associate judge.  Some but not all of the witnesses from the final hearing testified.  Following the hearing, the trial court signed an order terminating A.G.'s parental rights based on the predicate grounds found by the associate judge.[4]

## APPLICABLE LAW

The Texas Family Code permits a court to terminate the relationship between a parent and a child if the Department establishes at least one of the predicate grounds under section 161.001(b)(1) of the Code and that termination is in the best interest of the child.  *See* § 161.001(b)(1), (2).  *See also In re R.J.G.*, 681 S.W.3d 370, at *12–13 (Tex. 2023); *In re Z.N.*, 602 S.W.3d 541, 545 (Tex. 2020); *Holley v. Adams*, 544 S.W.2d 367,

---

[2] Because the referring court did not make a finding under subsections (D) or (E), we need not address either of those grounds.  *See In re N.G.*, 577 S.W.3d 230, 235–36 (Tex. 2019).

[3] Section 201.015(c) of the Family Code provides that in addition to testimony from new witnesses, the referring court in a de novo hearing may consider the record from the final hearing before the associate judge.  Here, the record from the de novo hearing reflects that the referring court did not mention or consider the transcript from the final hearing.  Nor was the transcript from the final hearing admitted into evidence.  Thus, this Court will consider only the evidence before the referring court presented at the de novo hearing.  *See In re A.S.*, No. 10-21-00272-CV, 2022 Tex. App. LEXIS 2264, at *8 n.4 (Tex. App.—Waco April 6, 2022, no pet.) (mem. op.).  *See generally In re J.R.*, No. 07-18-00240-CV, 2018 Tex. App. LEXIS 7862, at *2–3 (Tex. App.—Amarillo Sept. 26, 2018, no pet.) (mem. op.) (noting appellate court is obligated to review evidence that was before the trial court but finding it unnecessary under the circumstances to decide whether the transcript from the final hearing need be formally admitted into evidence before consideration by the referring court).

[4] Here, A.G. does not challenge the best-interest finding.

370 (Tex. 1976).  The Due Process Clause of the United States Constitution and section 161.001 of the Texas Family Code require application of the heightened standard of clear and convincing evidence in cases involving involuntary termination of parental rights.  *See In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002).  *See also* § 161.206(a).  "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  § 101.007.

Only one statutory ground is needed to support termination though the trial court must also find that termination is in a child's best interest.  *In re K.C.B.*, 280 S.W.3d 888, 894–95 (Tex. App.—Amarillo 2009, pet. denied).  In reviewing a termination proceeding, the standard for sufficiency of the evidence is that discussed in *In re K.M.L.*, 443 S.W.3d 101, 112–13 (Tex. 2014).

## STANDARD OF REVIEW

The natural right existing between parents and their child is of constitutional dimensions.  *See Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982).  A decree terminating the natural right between a parent and a child "is complete, final, irrevocable and divests for all time that natural right . . . ."  *In re E.R.*, 385 S.W.3d 552, 555 (Tex. 2012).  Thus, in seeking to permanently sever the parent-child relationship, the trial court must "observe fundamentally fair procedures."  *Id.* Consequently, termination proceedings are strictly construed in favor of the parent.  *Id.* at 563.  Parental rights, however, are not absolute, and it is essential that the emotional and

4

physical interests of a child not be sacrificed merely to preserve those rights. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

In a legal sufficiency challenge, we credit evidence that supports the verdict if reasonable jurors could have done so and disregard contrary evidence unless reasonable jurors could not have done so. *In re K.M.L.*, 443 S.W.3d at 112–13. However, the reviewing court should not disregard undisputed facts that do not support the verdict to determine whether there is clear and convincing evidence. *Id.* at 113. In cases requiring clear and convincing evidence, even evidence that does more than raise surmise and suspicion will not suffice unless that evidence is capable of producing a firm belief or conviction that the allegation is true. *Id.* If, after conducting a legal sufficiency review, a court determines that no reasonable trier of fact could form a firm belief or conviction that the matter that must be proven is true, then the evidence is legally insufficient. *Id.* (citing *In re J.F.C.*, 96 S.W.3d at 266).

In a factual sufficiency review, a court of appeals must give due consideration to evidence that the trier of fact could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266 (citing *In re C.H.*, 89 S.W.3d at 25). We must determine whether the evidence is such that a trier of fact could reasonably form a firm belief or conviction about the truth of the Department's allegations. *In re J.F.C.*, 96 S.W.3d at 266. We consider whether disputed evidence is such that a reasonable trier of fact could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable trier of fact could not have credited in favor of the finding is so significant that a trier of fact could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

5

A.G. maintains the evidence is insufficient to show he constructively abandoned his child. We disagree.

Constructive abandonment occurs when a child has been in the permanent or temporary managing conservatorship of the Department for not less than six months, the Department has made reasonable efforts to return the child to the parent, the parent has not regularly visited or maintained significant contact with the child, and the parent has shown an inability to provide the child with a safe and stable environment. § 161.001(b)(1)(N). Although imprisonment of a parent does not establish constructive abandonment, subsection (N) applies to incarcerated parents. *In re A.R.*, No. 07-19-00403-CV, 2020 Tex. App. LEXIS 2584, at *8 (Tex. App.—Amarillo March 26, 2020, pet. denied) (mem. op.).

For purposes of subsection (N), the Department's implementation of a family service plan is ordinarily considered a reasonable effort to return the child to the parent. *In re N.R.T.*, 338 S.W.3d 667, 674 (Tex. App.—Amarillo 2011, no pet.) (citing *In re M.R.J.M.*, 280 S.W.3d 494, 505 (Tex. App.—Fort Worth 2009, no pet.)). Physically returning the child to an incarcerated parent is not necessarily required; placement with a family member or friend may fulfill the Department's burden to return the child to the parent. *In re D.S.A.*, 113 S.W.3d 567, 573 (Tex. App.—Amarillo 2003, no pet.).

### ANALYSIS

It is undisputed that K.S.G. was in the Department's care for at least six months. The caseworker testified A.G. and his attorney were provided with a copy of the service

plan, which was admitted into evidence, and A.G. testified "that sounds familiar." The caseworker also communicated with A.G. monthly via phone calls prior to the final hearing. While this Court has held that implementation of a family service plan constitutes a reasonable effort to return the child to the parent, A.G. relies on *In re J.W.*, 615 S.W.3d 453 (Tex. App.—Texarkana 2020, pet. denied), for the proposition that the Department must also prove the parent was given a reasonable opportunity to complete the service plan. *Id.* at 463–64 (citing *In re A.Q.W.*, 395 S.W.3d 285, 289 (Tex. App.—San Antonio 2013, no pet.)). In *In re J.W.*, the court found the Department could not rely on the parent's failure to complete the service plan to prove it made a reasonable effort to return the child when only fifteen days had passed between the date the parties met to discuss the plan and commencement of the final hearing. *Id.* But the court recognized subsection (N) does not require compliance with the family service plan but only a reasonable effort to return the child to the parent. *Id.* at 463.

*In re J.W.* is distinguishable. A.G.'s service plan was developed on May 11, 2023. The final hearing commenced on August 28, 2023, and was continued until October 3, 2023. A.G.'s effort to comply with the service plan, however, was hampered by his poor choices which resulted in transfer to a medium custody facility which reduced the services available. Additionally, this Court is not bound to follow the decision of a sister court. *See Lambert v. Affiliated Foods, Inc.*, 20 S.W.3d 1, 8 (Tex. App.—Amarillo 2000), *aff'd*, *Lawrence v. CDB Servs.*, 44 S.W.3d 544 (Tex. 2001).

A physical return of the child was not possible while A.G. was incarcerated, and he did not provide the Department with names of family members or surrogates who could

serve as placements until very late in the proceedings.[5] He gave his brother's name to the caseworker. The brother contacted the caseworker a month prior to the final hearing but was not considered a possible placement by the trial court.

Even if we were to agree with A.G.'s position, his inability to comply with the service plan was of his own making—an improper relationship with a guard which caused him to be transferred and housed in isolation for six months. A.G. admitted he did not sign up for classes due to his isolation but acknowledged he should have contacted his attorney regarding alternative services.

The Department was also required to show the parent did not regularly visit or maintain significant contact with the child. A.G. acknowledged he had never met his child nor made any attempts to contact him. He claimed that he requested an update regarding a medical condition but admitted he had not requested additional information from the caseworker.

Due to his incarceration, he could not visit his child. The child's tender age also impeded an ability to communicate. But the caseworker testified he notified A.G. that cards, letters, or pictures could be provided through the Department to establish contact via the maternal grandmother. *See In re M.M.*, No. 07-19-00324-CV, 2020 Tex. App. LEXIS 2203, at *14–15 (Tex. App.—Amarillo March 16, 2020, pet. denied) (citing *In re D.S.A.*, 113 S.W.3d at 574) (observing the impossibility of a child living with a parent in a jail cell but recognizing that written correspondence read by the foster parent is evidence of significant contact)).

---

[5] A.G. explained he did not want to burden his family with his problems without consulting them.

8

The mother of two of A.G.'s older children testified. According to her testimony, A.G. has written them a few letters and he calls them on their birthdays or to check on them. Financial support for them, however, is provided by A.G.'s mother.

Finally, the Department was required to show A.G. could not provide a safe environment for his child. A factfinder may consider a parent's lack of participation in services, lack of steady housing and employment, and missed opportunities for counseling and other programs as factors demonstrating an inability to provide a safe and stable home. *In re B.C.*, No. 07-13-00078-CV, 2013 Tex. App. LEXIS 9682, at *9 (Tex. App.—Amarillo Aug. 1, 2013, no pet.) (mem. op.).

Prior to his incarceration, A.G. was employed and lived in a trailer. He admitted he lost everything following his arrest. Due to his status in medium custody, he was unable to work while in isolation and was unable to participate in most of the services required by his service plan. When asked if he had anything to offer his child, he responded, "I don't have a thing."

The Department established by clear and convincing evidence that (1) it made reasonable efforts to return the child, (2) A.G. failed to maintain any contact whatsoever with his child, and (3) A.G. was not able to provide a safe environment for his child. Thus, there is clear and convincing evidence to establish A.G. constructively abandoned his child. Issue one is overruled.

Because only one predicate ground is sufficient to support a termination order, issue two is pretermitted.

**CONCLUSION**

The trial court's order terminating A.G.'s parental rights is affirmed.


Alex Yarbrough
Justice