Opinion issued August 31, 2010



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-01099-CV

———————————

In re Mary Lynn Mabray, Relator



 



 

Original Proceeding on Petition for Writ of Mandamus



 



 

O P I N I O N[1]

By a petition for writ of mandamus, relator, Mary
Lynn Mabray, challenges the trial court’s October 30, 2009 order denying her
motion to disqualify Brenda Keen, counsel from representing her husband, Gary
Allen Mabray, and her motion to revoke consent to arbitration.  Mary contends that Keen’s representation of
her husband, and the arbitration agreement itself, violate Texas public
policy.  We disagree.  Accordingly, we deny mandamus relief.

                                                                                                                                                                
Background

After 35 years of marriage, Mary discovered her
husband Gary’s alleged ongoing infidelity and sought a divorce.  She retained Harry L. Tindall, and filed an
action for divorce in September 2008.  Gary
retained Brenda Keen and filed an answer in October 2008.

On
February 12, 2009, the parties and their counsel signed a four page document
titled “Cooperative Law Dispute Resolution Agreement” (“the Agreement”).  The Agreement states that the parties agreed
to “effectively and honestly communicate with each other with the goal of
efficiently and economically settling the terms of the dissolution of the
marriage.”  

The
Agreement forbids formal discovery unless agreed upon, relying instead on “good
faith” informal discovery.  Specifically,
the Agreement provides:

No formal discovery procedure
will be used unless specifically agreed to in advance.  The parties will be required to sign a sworn
inventory and appraisement if requested by the other party.

 

We acknowledge that, by using informal discovery,
we are giving up certain investigative procedures and methods that would be
available to us in the litigation process. 
We give up these measures with the specific understanding that the
parties will make to each other a complete and accurate disclosure of all
assets, income, debts, and other information necessary for us to reach a fair
settlement.  Participation in this
process is based on the assumptions that we have acted in good faith and that
the parties have provided complete and accurate information to the best of
their ability.

Neither party requested a sworn inventory and
appraisement.  

The
Agreement also provides that, if the divorce was not settled by April 30, 2009,
the cooperative law process would cease and the parties agreed to submit
the divorce to arbitration. 
Specifically, the Agreement provides:

The parties further agree that
if this case has not been settled by negotiation and an Agreed Final Decree of
Divorce has not been submitted to and signed by the Court before April 30, 2009
then this matter will be submitted to binding arbitration pursuant to the Joint
Motion for Referral to Arbitration and Agreed Order of Referral to Arbitration
attached hereto and made a part hereof.

 

The parties agree to be bound by this agreement,
the Texas alternative Dispute Resolution Procedures Act (chapter 154 of the
Texas Civil Practice and Remedies Code), the Texas General Arbitration Law
(chapter 171 of the Texas Civil Practice and Remedies Code), Section 6.601,
Texas Family code, and the laws of the state of Texas.

The
parties, through their counsel signed a “Joint Motion for Referral to
Arbitration” that was filed on March 11, 2009. 
The motion asked the trial court to submit their case to arbitration on
or before July 3, 2009, if the parties had not resolved their case by agreement
by April 30, 2009, and also asked that a certain person, agreed to by the
parties, be appointed as the arbitrator. 
The trial court signed the requested order on March 18, 2009.

An agreed final decree of
divorce was not submitted to the court by April 30, 2009.  Accordingly, the cooperative law process
ceased by its own terms.  

In May, the person appointed as the arbitrator discovered
a conflict that prevented him from presiding over the arbitration
proceedings.  The parties subsequently
agreed to a new person to act as arbitrator and submitted an agreed order to
the trial court on July 2, 2009, representing “as evidenced by the signatures
of their respective attorneys of record” that (1) they wanted a new arbitrator
appointed; (2) the case was not resolved by agreement of the parties before
April 30, 2009; and (3) they had agreed to amend the Agreement to provide that
the case would be submitted to binding arbitration on or before August 31,
2009.[2]  The trial court signed the order on August
12, 2009, ordering the parties to submit their dispute for arbitration before
the newly-designated arbitrator on August 26, 2009—a date agreed to by the
parties.

After the parties submitted this agreed order to the trial
court, but before the trial court signed the order, Mary submitted a motion to
substitute counsel.  The order granting
the motion to substitute counsel was signed by the trial court on August 7,
2009.  Accordingly, Mary’s new counsel,
Stephen Shoultz, was appointed five days before the agreed order was signed.

On August 14, 2009, two days after the agreed order had
been signed, Mary filed a motion to revoke her consent to arbitration.  Specifically, she stated that Tindall had
“forced” her to sign the Agreement while she was “emotionally distraught” over
the divorce and under the influence of tranquilizers.

Six days after that, she filed a motion to disqualify
Keen, Gary’s counsel.  Mary asserted that
the Agreement sought to “contract around” Texas’s collaborative law statute,
section 6.603 of the Texas Family Code. 
Because Keen would be unable to continue to represent Gary in litigation
under a collaborative law agreement once the collaborative process had failed,
Mary contended that Keen must also be disqualified after the cooperative
process failed.  

Gary moved to enforce the Agreement and to compel
arbitration, noting that the Texas collaborative law statue is inapplicable to
cooperative law agreements.

At the hearing, Mary contended that Gary breached the
cooperative law agreement by concealing assets, but Gary’s counsel asserted
that the arbitrator, not the trial court, should determine whether he breached
the Agreement.[3]  The trial court agreed with Gary’s counsel,
noting that the parties had eschewed formal, sworn discovery unless made
otherwise by agreement.  The trial court
granted Gary’s motion, concluding that “[i]f they want to enter into an
agreement which, apparently, they both signed, and call it Cooperative Law
Agreement . . . I don’t think there’s any assumption that they can’t do
that.”  

On October 30, 2009, the trial court signed an order
compelling arbitration, which provides, in part:

This case was not resolved by agreement
of the parties before April 30, 2009, and the parties are required to arbitrate
their divorce action pursuant to the Cooperative Law Dispute Resolution
Agreement signed by the parties on February 12, 2009. . . .

 

It is ordered that Mary Lynn Mabray’s Motion to
Disqualify Brenda Keen is hereby denied.

 

It is ordered that Mary Lynn Mabray’s First
Amended Motion to Revoke Consent to Arbitration and Request for Jury Trial is
hereby denied.

The trial court filed findings of fact and
conclusions of law.  Subsequently, the
trial court filed additional findings of fact and conclusions of law that
state:

1.       Brenda Keen is not required to withdraw as attorney for Gary
Allen Mabray after the parties failed to reach a settlement under the
Cooperative Law Dispute Resolution Agreement. 

2.       The
Cooperative Law Dispute Resolution Agreement is not governed by Texas Family
Code § 6.603.

3.       The
Cooperative Law Dispute Resolution Agreement does not violate Texas Public
Policy.

4.       Brenda
Keen is not disqualified to represent Gary Allen Mabray.

In two points of error in her petition for writ of
mandamus, Mary argues that the trial court abused its discretion in failing to
disqualify Keen and in ordering the parties to submit to arbitration.  For her first point of error, Mary does not
contend that Keen’s representation of Gary violates the Texas Disciplinary
Rules of Professional Conduct.  See in re Cerberus
Capital Mgmt., L.P., 164 S.W.3d 379, 382 (Tex. 2005) (holding disciplinary rules can provide
guidelines relevant to a disqualification determination).  Moreover, she does not assert that she
divulged confidential information to Keen that could be used inappropriately in
litigation.  Nor does she state that she
and Keen engaged in an attorney-client relationship.  Instead, she contends generally that Keen
must be disqualified because the collaborative law statute controls the
agreement and because cooperative law agreements violate public policy in
Texas.

In his response to the petition for writ of mandamus, Gary
argues that Mary’s petition is barred by laches.

                                                                                                                                                   
Mandamus Review

Mandamus relief is available only to correct a clear
abuse of discretion when there is no adequate remedy by appeal.  Walker v. Packer, 827 S.W.2d 833, 839
(Tex. 1992).  A clear abuse of discretion
occurs when a trial court “reaches a decision so arbitrary and unreasonable as
to amount to a clear and prejudicial error of law.”  Johnson v. Fourth Court of Appeals,
700 S.W.2d 916, 917 (Tex. 1985) (orig. proceeding).  The reviewing court may not substitute its
judgment for that of the trial court when reviewing factual issues.  Walker,
827 S.W.2d at 839–40.  Even if the
reviewing court would have decided the issue differently, it cannot disturb the
trial court’s decision unless the decision is shown to be arbitrary and
unreasonable.  Id. at 840.  When a trial court improperly denies a motion
to disqualify opposing counsel, there is no adequate remedy by appeal and
mandamus relief is appropriate.  In re
Basco, 221 S.W.3d 637, 639 (Tex. 2007). 
Mandamus review may be appropriate for an order granting a motion to
compel arbitration when it is necessary “to preserve important substantive and
procedural rights from impairment or loss.” 
In re Gulf Exploration, LLC,
289 S.W.3d 836, 843 (Tex. 2009).

                                                                                                                                                                            
Laches

As a threshold issue, Gary
contends that Mary’s petition for writ of mandamus is barred by laches.  Although mandamus is a legal remedy, it is
largely controlled by equitable principles. 
Rivercenter Assocs. v. Rivera, 858 S.W.2d 366, 367 (Tex.
1993).  One such equitable principle is
that equity aids the diligent and not those who slumber on their rights.  Id. 
A party asserting the defense of laches must show both an unreasonable
delay by the mandamus petitioner and harm resulting from the delay.  Rogers v. Ricane Enters., 772 S.W.2d
76, 80 (Tex. 1989).  Delay alone will not
constitute laches; injury or prejudice must also be established.  Lawrence v. Lawrence, 911 S.W.2d 443,
449 (Tex. App.—Texarkana 1995, writ denied). 
Laches is a question of fact that should be determined by considering
all of the circumstances in each particular case.  See Tribble & Stephens Co. v. RGM
Constructors, L.P., 154 S.W.3d
639, 669 (Tex. App.—Houston [14th Dist.] 2004, pet. denied).

Here, the trial court
signed its order denying Mary’s motions to disqualify Keen and revoke consent
to the Agreement on October 30, 2009. 
The trial court issued its additional findings of fact and conclusions
of law on November 25, 2009.  Mary
petitioned for mandamus on December 22, 2009, and explained that the delay was
caused because she was waiting to review the trial court’s additional findings
of fact and conclusions of law.  Gary
does not indicate how he was harmed by the delay.  See Rogers, 772 S.W.2d at 80.  Because Mary adequately explains her brief
delay and Gary fails to show harm, we hold that Mary has not slumbered on her
rights.

                                                                                                                
Collaborative and Cooperative Law

The case before us
concerns the legitimacy of cooperative law. 
Because cooperative law is untreated in Texas case law, and its more
established cousin, collaborative law, only receives minor treatment, a
brief exposition of each is warranted.

Collaborative law is
codified in the Texas Family Code, which provides, in part:

(a)     On a written agreement of the parties and their attorneys, a
dissolution of marriage proceeding may be conducted under collaborative law
procedures.

(b)     Collaborative
law is a procedure in which the parties and their counsel agree in writing to
use their best efforts and make a good faith attempt to resolve their dissolution
of marriage dispute on an agreed basis without resorting to judicial
intervention except to have the court approve the settlement agreement, make
the legal pronouncements, and sign the orders required by law to effectuate the
agreement of the parties as the court determines appropriate.  The parties’ counsel may not serve as
litigation counsel except to ask the court to approve the settlement agreement.

(c)      A
collaborative law agreement must include provisions for:

(1)     full
and candid exchange of information between parties and their attorneys as
necessary to make a proper evaluation of the case;

(2)     suspending
court intervention in the dispute while the parties are using collaborative law
procedures;

(3)     hiring
experts, as jointly agreed, to be used in the procedure

(4)     withdrawal
of all counsel involved in the collaborative law procedure if the collaborative
law procedure does not result in settlement of the dispute; and

(5)     other
provisions as agreed to by the parties consistent with a good faith effort to
collaboratively settle the matter.

. . . .

Tex. Fam. Code Ann. § 6.603 (Vernon 2006) (emphasis
added).

Collaborative law is a variety
of alternative dispute resolution, used most commonly in the context of
divorce, that “provides for an advance agreement entered into by the parties
and the lawyers in their individual capacities, under which the lawyers commit
to terminate their representations in the event the settlement process is
unsuccessful and the matter proceeds to litigation.”  Stephanie Smith and Janet Martinez, An
Analytic Framework for Dispute System Design, 14 Harv. Negot. L. Rev. 123, 166 (2009).  Developed in Minnesota in 1990, collaborative
law attempts to foster an amiable rather than an adversarial atmosphere by
creating a “four-way” agreement between each party and their attorneys “in
which all are expected to participate actively.”  John Lande and Gregg Herman, Fitting the
Forum to the Family Fuss, 42 Fam.
Ct. Rev. 280, 283 (2004).  

The presence of a disqualification agreement is widely
held to be the minimum qualification for calling a practice collaborative
law.  Id.; see also Pauline Tesler, Collaborative Law: Achieving Effective Resolution in Divorce Without
Litigation 5–6 (American Bar Association 2008) (“There is really only one
irreducible minimum condition for calling what you do ‘collaborative law’: you
and the counsel for the other party must sign papers disqualifying you from
ever appearing in court on behalf of either of these clients against the
other.”).  Specifically,
collaborative law attorneys cannot represent their collaborative clients in
litigation if the collaborative process fails, but collaborative law clients
retain their right to pursue litigation with new counsel.  John Lande, Possibilities for
Collaborative Law: Ethics and Practice of Lawyer Disqualification and Process
Control in a New Model of Lawyering, 64 Ohio
St. L.J. 1315, 1322 n.20 (2003).  

In some jurisdictions, collaborative law attorneys may
continue to represent their clients in arbitration if the parties agree to
arbitration in the collaborative law agreement. 
See, e.g., N.C. Gen. Stat. § 50-78 (2007) (providing,
“The parties’ attorneys for the collaborative law proceeding may also serve as
counsel for any form of alternate dispute resolution pursued as part of the
collaborative law agreement”).  Although
case law has not addressed the issue, Texas appears to preclude a
collaborative-law attorney’s representation of a collaborative-law client in
arbitration.  See Tex. Fam. Code Ann. § 6.603(c)(4).

Akin to collaborative law,
cooperative law “is a process which incorporates many of the hallmarks of Collaborative
Law but does not require the lawyer to enter into a contract with the opposing
party providing for the lawyer’s disqualification.”  Smith and Martinez, 14 Harv. Negot. L. Rev. at 166.  “Cooperative law includes a written agreement
to make full, voluntary disclosure of all financial information, avoid formal
discovery procedures, utilize joint rather than unilateral appraisals, and use
interest-based negotiation.”  Lande and
Herman, 42 Fam. Ct. Rev. at
284.  Put simply, cooperative law
agreements mirror collaborative law agreements in spirit and objective, but
lack the disqualification clause unique to collaborative law agreements.

Mary portrays cooperative law as an illegitimate
aberration of collaborative law, and asks that the Agreement be interpreted by
the statutory standards of a collaborative law agreement.  However, it is noteworthy that at least one
legal association has determined that cooperative law passes ethical muster
while collaborative law does not.  The Ethics
Committee for the Colorado Bar Association states:

[T]he practice of
Collaborative Law violates Rule 1.7(b) of Colorado Rules of Professional
Conduct insofar as a lawyer participating in the process enters into a
contractual agreement with the opposing party requiring the lawyer to withdraw
in the event that the process is unsuccessful. 
The Committee further concludes that pursuant to Colo. RPC 1.7(c) the
client’s consent to waive this conflict cannot be validly obtained.  Because Cooperative Law lacks the
disqualification agreement found in Collaborative Law, the practice of
Cooperative Law is not per se unethical.[4]

Colo.
Bar Ass’n Ethics Comm., Formal Op. 115 (Feb. 24, 2007).  

Here, we do not weigh the legitimacy of collaborative law;
it already has been adopted in Texas.[5]  Instead, we examine whether the collaborative
law statute excludes the use of cooperative agreements and whether Texas public
policy permits cooperative law, a matter of first impression in this
court.  According to experts, cooperative
law is a small but legitimate movement akin to collaborative law.  See, e.g., Hon. Tommy Bryan, Saying
“No” To Court?, 70 Ala. Law.
434, 436 (2009); Lande and Herman, 42 Fam.
Ct. Rev. at 284.  Like
collaborative law, it possesses both benefits and detriments.  For example, the absence of a
disqualification agreement offers advantages but also poses disadvantages.  Lande and Herman, 42 Fam. Ct. Rev. at 284.  Specifically,
“parties and lawyers may act reasonably only if they face a credible threat of
litigation.”  Id.  Additionally, cooperative law clients are
less likely to feel mired in the cooperative process because they need not hire
and educate new lawyers should litigation ensue.  See Bryan, 70 Ala. Law. at 436.  Conversely,
collaborative law clients may feel unduly pressured to complete the
collaborative process rather than pursue litigation because of the cost and
inconvenience of hiring and educating a new attorney.  Id. 
Of course, cooperative law threatens to “taint the negotiation by
undermining a problem-solving atmosphere.” 
Lande, 42 Fam. Ct. Rev. at
284.

While we have not encountered cooperative law’s
codification in any state’s code, neither have we encountered its prohibition.[6]
 In fact, as we have observed, it has
been found to be a better system in at least one jurisdiction.  See Colo. Bar Ass’n Ethics Comm.,
Formal Op. 115.

Against this general backdrop, we must determine whether the
collaborative law statute controls this agreement and, if not, whether a
cooperative law agreement is void as a matter of public policy within the State
of Texas.  We will first consider whether the
collaborative law statute controls before determining whether cooperative law
agreements violate public policy.

Applicability of the Collaborative Law Statute

In her
first point of error, Mary asserts that Keen must be
disqualified because Keen’s continued representation of Gary violates the Texas
collaborative law statute.  Specifically,
Mary contends that “[u]sing a slightly different title for the ADR agreement
does not avoid the protections of the statute.” 
Gary responds that the collaborative law statute is inapplicable to a
cooperative law agreement.

The trial court determined that the Agreement is a
cooperative law agreement, not a collaborative law agreement, and therefore
need not conform to Texas’s collaborative law statute.  The Agreement does not suffer from a crisis
of identity; it does not reference collaborative law or the collaborative law
statute.  

Mary contends that
“leaving out a required element does not avoid a statute; it violates it.”  In order for this to be true, however, the
statute would either have to mandate its application or forbid the use of
cooperative law agreements.  We hold that
it does neither.

It is clear by its plain language that the collaborative
law statute is elective, not mandatory.  Subsection
(a) of the statute explicitly provides that “a dissolution of marriage
proceeding may be conducted under
collaborative law procedures.”  Tex. Fam. Code Ann. § 6.603(a)
(emphasis added).  Nothing in the statute
mandates its usage.  Instead, parties
that elect to follow its procedures obtain certain benefits from the trial
court.  The parties can obtain a judgment
on their collaborative law agreement by signing the settlement agreement and
including a boldfaced, capitalized, or underlined statement that the agreement
is not subject to revocation.  Id. § 6.603(d).  If the parties provide proper notice to the
trial court, the court is precluded from setting a hearing or trial in the
case, imposing discovery deadlines, requiring compliance with scheduling
orders, or dismissing the case while the parties are using the process.  Id.
§ 6.603(e).  Additionally, the
statute incorporates the provisions for confidentiality of alternative dispute
resolution procedures as provided in Chapter 154 of the Civil Practices and
Remedies Code for collaborative law procedures. 
Id. § 6.603(h).

In order to obtain these benefits, the parties must enter
into an agreement providing for (1) a full and candid exchange of information;
(2) suspending court intervention in the dispute while the parties are using
collaborative law procedures; (3) hiring any experts jointly; (4) withdrawal of
all counsel in the collaborative law procedure if the collaborative law
procedure does not result in settlement of the dispute; and (5) other
provisions agreed to by the parties that are consistent with a good faith effort
to collaboratively settle the suit.[7]  Id.
§ 6.603(c).  The Agreement signed by
Mary and Gary does not require the withdrawal of counsel if settlement is not
obtained, the fourth requirement for application of the collaborative law
statute.  Accordingly, by the plain
language of the statute, the collaborative law procedures and resulting benefits
do not apply to the Agreement.

Additionally, nothing in the statute or in its legislative
history leads us to the conclusion that the collaborative law statute forbids
parties in Texas from entering into cooperative law agreements.  It has been the stated policy
of Texas from at least 1987 “to encourage the peaceable resolution of disputes
. . . and the early settlement of pending litigation through voluntary
settlement procedures.”  Tex. Civ. Prac. & Rem. Code Ann.
§ 154.002 (Vernon 2005).  There is
no statute or case law in Texas that explicitly prohibits any specific form of
alternative dispute resolution.

The collaborative law statute is one of four alternative
dispute resolution processes that the Texas legislature specifically encourages
parties in divorce proceedings to utilize. 
The four processes are arbitration, mediation, collaborative law, and
informal settlement conferences.  Tex. Fam. Code Ann. §§ 6.601–.604
(Vernon 2006).  Nothing in these statutes
states that they are the exclusive forms of alternative dispute resolution
available to parties to a divorce. 

Even if these were the exclusive forms of alternative
dispute resolution available to parties to a divorce, the Agreement
specifically cites to sections 6.601 and 6.604 of the Family Code.  Those are the arbitration and informal
settlement conference provisions, respectively. 
Tex. Fam. Code Ann. §§ 6.601,
.604.  

In an informal settlement conference, “[t]he parties to a
suit for dissolution of a marriage may agree to one or more informal settlement
conferences and may agree that the settlement conferences may be conducted with
or without the presence of the parties’ attorneys, if any.”  Tex.
Fam. Code Ann. § 6.604(a). 
The legislature did not in any other way limit or constrict the parties’
abilities to determine how informal settlement conferences would be
conducted.  Because this statute is
deliberately silent as to the procedures that can be used in informal
settlement conferences, we must conclude that the legislature meant to cast a
wide net and give the parties wide latitude in deciding how to structure them,
including structuring them through a cooperative law agreement.

The dissent argues that the legislature’s enacting of the
collaborative law statute is proof that they meant to exclude cooperative law
agreements.  We cannot agree.  The legislature knows how to conscribe
permissible actions when other related actions would be in violation of public
policy.  See, e.g., Tex. Bus. &
Com. Code Ann. § 15.05 (Vernon 2002) (mandating every contract in
restraint of trade is unlawful), § 15.50 (Vernon Supp. 2009) (providing strict
requirements for covenants not to compete to avoid violation of public
policy).  The legislature has taken no
such action here.  Instead, it has
determined that alternative dispute resolution is beneficial and encourages
it.  Tex.
Civ. Prac. & Rem. Code Ann. § 154.002.  Given the legislature’s broad approval of
alternative dispute resolution, we find no reason to determine that it meant to
prohibit parties from entering into cooperative law agreements.

We overrule Mary’s first point of error.

Applicability of the Arbitration Provision

In her
second point of error, Mary contends that the trial
court abused its discretion by denying her motion to revoke her consent to
arbitrate because (1) the Agreement is unenforceable because it violates the
public policy of Texas; (2) Gary’s dishonest conduct within the cooperative
process served to breach and thereby invalidate the Agreement; (3) she lacked
mental capacity and the Agreement was obtained fraudulently; and (4) she
revoked her consent to the Agreement.[8]  Mary also asserts that the trial court abused
its discretion by determining that the second and third issues must be
determined by the arbitrator.

A.              
Standard of Review

A party moving to compel
arbitration must establish (1) the existence of a valid, enforceable
arbitration agreement and (2) that the claims asserted fall within the scope of
that agreement.  In re Oakwood Mobile
Homes, Inc., 987 S.W.2d 571, 573 (Tex. 1999).  If the movant establishes that an arbitration
agreement governs the dispute, the burden then shifts to the party opposing
arbitration to establish a defense to the arbitration agreement.  In re
Provine, 312 S.W.3d 824, 829 (Tex. App.—Houston [1st Dist.] 2009, orig.
proceeding).  A party may revoke the
agreement only on a ground that exists at law or in equity for the revocation
of a contract. Tex. Civ. Prac. &
Rem. Code Ann. § 171.001(b) (Vernon 2005).  “Once the trial court concludes that the
arbitration agreement encompasses the claims, and that the party opposing
arbitration has failed to prove its defenses, the trial court has no discretion
but to compel arbitration and stay its own proceedings.”  In re FirstMerit Bank, N.A., 52 S.W.3d
749, 753–54 (Tex. 2001).

Whether an agreement imposes a
duty to arbitrate is a question of law which the appellate court reviews de
novo.  In re Provine, 312 S.W.3d at 829. 
We apply ordinary state-law principles governing contracts to determine
whether an agreement to arbitrate was formed. 
J.M. Davidson, Inc. v. Webster,
128 S.W.3d 223, 227–28 (Tex. 2003).  “[A]bsent
unmistakable evidence that the parties intended to the contrary, it is the
courts rather than the arbitrators that must decide ‘gateway matters.’”  In re Weekley Homes, L.P., 180 S.W.3d
127, 130 (Tex. 2005).  An appellate court
may not deal with disputed areas of fact in an original mandamus
proceeding.  West v. Solito, 563
S.W.2d 240, 245 (1978).

B.              
Enforceability of the Arbitration Provision

Mary argues that the arbitration provision cannot be
enforced because the Agreement, generally, is not enforceable because it
violates public policy.

Even if the collaborative law section of the Agreement
were in violation of public policy, this does not automatically mean that the
arbitration section of the Agreement is unenforceable.  

An illegal
or unconscionable provision of
a contract may generally be severed so long as it does not constitute the essential
purpose of the agreement.  Whether
or not the invalidity of a particular provision affects the rest of the
contract depends upon whether the remaining provisions are independent or
mutually dependent promises, which courts determine by looking to the language
of the contract itself.  The relevant
inquiry is whether or not parties would have entered into the agreement absent
the unenforceable provisions.

In re
Poly-America, L.P., 262 S.W.3d 337, 360 (Tex. 2008).

The Agreement in this case consists of four sections: (1)
the preamble, stating the purpose of the Agreement; (2) the provisions for
their collaborative law agreement; (3) the provisions for their arbitration
agreement; and (4) miscellaneous provisions. 
In the first section, the parties “acknowledge[d] the shared belief that
it is in the best interests of the parties to avoid litigation.”  Both the cooperative law agreement section
and the arbitration agreement section accomplish this stated purpose.  Significantly, the Agreement only allowed the
parties about two-and-a-half months to resolve their dispute through the cooperative
law process.  After that, the arbitration
provision controls.  The arbitration
section is the longest section and contains the most detailed procedures.  The title of the Agreement notwithstanding,
it is reasonable to determine that the arbitration section is an independent
agreement that the parties would have agreed to even without the presence of
the cooperative law section. 
Accordingly, even if the collaborative law agreement were void, the
arbitration provision would be severable.

Nevertheless, we conclude that the cooperative law portion
of the Agreement does not violate public policy.  Whether a contract
violates public policy is a question of law we review de novo.  Lawrence v. CDB Servs., Inc., 44
S.W.3d 544, 555 (Tex. 2001) (superceded by statute
on other grounds).  Public policy is a
vague and uncertain term that is up to the power of the lawmaking body to
define.  Tex. Commerce Bank, N.A. v.
Grizzle, 96 S.W.3d 240, 250 (Tex. 2002) (quoting Lawrence, 44 S.W.3d
at 553).  “[C]ourts are apt to encroach
upon the domain of that branch of the government if they characterize a
transaction as invalid because it is contrary to public policy, unless the
transaction contravenes some positive statute or some well-established rule of
law.”  Id. (quoting Lawrence,
44 S.W.3d at 553).  

Texas expresses its public policy through its
statutes.  Id.  Therefore, “to determine whether a contract
violates public policy, we consider the policies underlying any applicable
statutes.”  Lawrence, 44 S.W.3d at
555.  The appropriate test
when considering whether a contract violates public policy “is whether the tendency
of the agreement is injurious to the public good, not whether its application
in a particular case results in actual injury.” 
Hazelwood v. Mandrell Indus. Co., Ltd., 596 S.W.2d 204, 206 (Tex.
Civ. App.—Houston [1st Dist.] 1980, writ ref’d n.r.e.).

With respect to domestic disputes, as well as in other
areas of the law, Texas public policy
permits and encourages parties to enter into agreements to submit disputes to
various forms of alternative dispute resolution.  See, e.g., Tex. Fam. Code Ann. §§ 6.601–.604; Tex. Civ. Prac. & Rem. Code Ann.,
Title 7.  Texas public policy also
strongly favors “preserving the freedom to contract.”  Lawrence, 44 S.W.3d at 553.  “The courts will not enforce a contract whose
provisions are against public policy.”  Sacks
v. Dallas Gold & Silver Exch., Inc., 720 S.W.2d 177, 180 (Tex.
App.—Dallas 1986, no writ).

We can see no reason why we should hold that cooperative
law agreements violate public policy in Texas. 
Neither the collaborative law statute nor common law prohibit the
practice of cooperative law in Texas, and Mary has offered no persuasive
evidence as to why cooperative law agreements cannot be negotiated by parties
within Texas’s generous ADR ambit.  See
Tex. Civ. Prac. & Rem. Code Ann.
§ 154.002.  As we have noted,
experts generally neither laud nor condemn it, but note its benefits and
detriments as a legitimate ADR procedure akin to collaborative law.

In fact, due to their strong similarities, we could find
that cooperative law agreements violate public policy only if we were to
determine that allowing the parties to retain their original attorneys if they
fail to reach an agreement violates public policy.  We see no justification for this result.  

Although Mary does not
contend that she disclosed confidential information to Keen that could be
utilized against her in litigation, the possibility of a client’s disclosure of
privileged information to opposing counsel at a “four-way” meeting is not
insignificant.  See Lande, 64 Ohio St. L.J. at 1341–42 (generally
critical of collaborative law). 
“Four-way” meetings are common to both collaborative and cooperative
law, but, as has been repeatedly underscored, only cooperative law permits
retention of the same counsel in litigation. 
See Smith and Martinez, 14 Harv.
Negot. L. Rev. at 166.  We must
determine, then, whether this retention of counsel in litigation, in light of
possible disclosure of privileged information, is injurious to the public
good.  See Hazelwood, 596 S.W.2d
at 206.  

It is noteworthy that collaborative law, a process blessed
by the Texas legislature, poses nearly the same risk of disclosure of
privileged information.  Specifically, a
collaborative client in a four-way meeting may, in the collaborative spirit of
the moment, divulge confidential information to both the opposing party and the
opposing party’s attorney.  See Lande,
64 Ohio St. L.J. at 1341–42.  The opposing attorney will be disqualified
from ensuing litigation, but the opposing party, having also heard the
confidential information, will not.  See
Tex. Fam. Code Ann. § 6.603(c)(4).  

Specifically, in collaborative law, nothing prevents the
opposing party privy to the confidential disclosure from imparting the
information to his new litigation counsel. 
This risk did not prevent the Texas legislature from adopting
collaborative law.  Nor should
cooperative law’s similar risk lead to a prohibition of cooperative law.

Moreover, the only harm that Mary can identify that she
has suffered is a loss of the right to force her husband to obtain a new
attorney.  She does not articulate why
this right is so fundamental that the lack of it should be held to violate public
policy.

The dissent argues that the cooperative law agreement
violates public policy because the collaborative law statute “provides for
returning the case to the regular docket setting for trial or dismissal without
prejudice if settlement is not reached in two years,” while the Agreement
terminated by its own terms after only two-and-one-half months but then
required the parties to proceed to binding arbitration.  To the degree that the dissent suggests that
a time less than two years violates public policy, we disagree.  The statute precludes a trial court from
taking certain actions while the parties are engaged in the collaborative law
process.  Tex. Fam. Code Ann. § 6.603(e).  If, however, the collaborative law process
extends for more than two years, the trial court may set the suit for trial on the regular docket or dismiss the
suit without prejudice.  Id. § 6.603(g).  This is not mandatory.  Even if it were, it only sets a maximum
amount of time the process can continue. 
It does not set a minimum.  Nor
could it, considering that the stated purpose of the statute is for the process
to be “entirely voluntary and participation may be terminated at any
time.”  House Comm. on Civil
Practices, Bill Analysis, Tex. H.B. 1363, 77th Leg., R.S. (2001).  If it can be terminated at any time, certainly
the parties can agree to a specific termination date at the time of entering
into the agreement.

To the degree that the dissent suggests that the
arbitration provision in the Agreement renders it against public policy, this
conclusion cannot stand.  First and
foremost, the subsection that the dissent cites to for support for its argument
that a collaborative law agreement cannot proceed to arbitration merely
provides that if the parties have not
resolved their divorce through the collaborative law process within two years,
the court may set the suit for
trial.  Id. § 6.603(g).  A
provision allowing a judge to set a case for trial after waiting for two years
is distinctly different from a provision that prohibits parties from agreeing
to give up their right to a trial.

Second, arbitration is one of the specifically condoned
forms of alternative dispute resolution in the Family Code.  Tex.
Fam. Code Ann. § 6.601.  It
cannot be said that a specifically condoned form of alternative dispute
resolution violates public policy when it is included in an agreement for
another specifically condoned form of alternative dispute resolution—such as
collaborative law—or even when it is included in an agreement that has not
received statutory recognition—such as cooperative law.  Even if cooperative law agreements did
violate public policy in Texas, an inclusion of a statutorily condoned action
cannot heighten its violation.

Third, the collaborative law statute specifically states
that collaborative law agreements can contain “other provisions as agreed to by
the parties consistent with a good faith effort to collaboratively settle the matter.”  Tex.
Fam. Code Ann. § 6.603(c)(5).  Arbitration is specifically condoned in
resolution of divorces.  Tex. Fam. Code Ann. § 6.601.  Accordingly, its inclusion in a collaborative
law agreement cannot be inconsistent with a good faith effort to
collaboratively settle the matter.  By
extension, its inclusion in a cooperative law agreement cannot be used to
create a contrast that would somehow render it in violation of public policy.

C.              
Breach of the Agreement

Gary proved (1) the existence of a valid, enforceable
arbitration agreement and (2) that the claims asserted fall within the scope of
that agreement.  See In re Oakwood,
987 S.W.2d at 573.  Specifically, Gary
offered the signed Agreement.  As we have
already determined, the fact that the Agreement is framed in cooperative law
does not render it invalid.  Moreover, it
is undisputed that Gary’s claims fall within the scope of the Agreement.  Id. 
When an agreed final decree of divorce, signed by the court, was not
submitted to the court by April 30, 2009, the Agreement’s arbitration clause
was triggered.

At the hearing, the trial court determined that the
arbitrator should determine whether Gary breached the Agreement.  The trial court explained that, based upon
the lack of formal, sworn discovery, it was incapable of making an informed
determination of whether Gary had honestly complied with the cooperative law
process.  Additionally, the parties had
not produced a sworn inventory.  Breach
of the Agreement by not conforming to its parameters is not a “gateway matter”
properly addressed by a trial court.  In re Weekley Homes, L.P., 180 S.W.3d 127,
130.  Accordingly, the trial court did
not abuse its discretion by determining that the arbitrator should decide
whether Gary breached the Agreement.

D.              
Capacity and Fraud

Unlike breach of the Agreement, Mary’s defenses of lack of
mental capacity and fraud are gateway matters best addressed by a trial
court.  Id.  The record, however, does not support that
the trial court ordered the arbitrator to address Mary’s defenses of lack of
mental capacity and fraud.  Implicitly,
the trial court considered them and found them unmeritorious.  In its October 30, 2009 order, the trial
court denied Mary’s motion to revoke consent to arbitration.  At the hearing, the trial court explicitly
determined that Mary’s breach of contract defense must be determined by the
arbitrator, but did not explicitly address her lack of mental capacity and
fraud defenses.  Accordingly, we conclude
that Mary’s contention that the trial court delegated determination of Mary’s
defenses of lack of mental capacity and fraud to the arbitrator is not
supported by the record.  Furthermore, we
may not determine whether the trial court abused its discretion in determining
that Mary’s defenses of lack of mental capacity and fraud failed to invalidate
the Agreement because such determinations involve disputed areas of fact.  West, 563 S.W.2d at 245.  

E.              
Revocation of consent

Finally, Mary argues that she revoked her consent to the
Agreement.  She correctly asserts that a
party may withdraw consent to a Rule 11 settlement agreement prior to
judgment.  See Kennedy v. Hyde, 682 S.W.2d 525, 528 (Tex. 1984).  Mary argues, “The present case is analogous
because it provides for a settlement process which would inevitably lead to a
judgment.”  Regardless of whether the
process would lead to a judgment, the simple fact is that there currently is
not a judgment.  This rule only allows
parties to revoke their consent to the entry of an agreed judgment, not the
process that could lead to such a judgment. 
The parties cannot revoke their consent to the process that would lead
to a judgment simply because that is the ultimate goal.  Accordingly, this rule does not apply.  

Moreover, this rule only applies to agreed judgments.  The
arbitration process, more than likely, will lead to a judgment that at least
one of the parties does not agree to, just as the judgment following a trial
would.  This does not mean that a party
can revoke her “consent” to it.  Accordingly,
we hold that the trial court did not abuse its discretion by denying Mary’s
motion to revoke consent.

Finally, we note that Mary and Gary twice asked the court
to enforce their arbitration provision. 
The trial court complied both times. 
It was not until after both of these orders had been signed that Mary
attempted to revoke her consent to arbitration. 
“[A] party cannot complain on appeal that the trial court took a
specific action that the complaining party requested.”  Tittizer
v. Union Gas Corp., 171 S.W.3d 857, 862 (Tex. 2005).

We overrule Mary’s second point of error.

Conclusion

The trial court did not abuse its discretion by
denying Mary’s motions to disqualify Keen and revoke consent to the
Agreement.  We therefore deny the petition for writ of
mandamus.

 

                                                                   Laura
Carter Higley

                                                                   Justice


 

Justice Keyes dissenting.

 

Panel
consists of Justices Keyes, Hanks, and Higley.











[1]           The underlying case is In the
Matter of the Marriage of Mary Lynn Mabray and Gary Allen Mabray, No.
2008-53714, in the 311th Judicial District Court of Harris County, Texas, the
Hon. Doug Warne, presiding.





[2]           The agreed order expressly states that
it was signed by permission on behalf of Mary. 
Nothing in the record challenges the accuracy of the statement.





[3]           Gary did not attend the hearing.





[4]           Colorado’s Rules of Professional
Conduct, at the time the ethics opinion was issued, provided: “A lawyer shall
not represent a client if the representation of that client may be materially
limited by the lawyer’s responsibilities to . . . a third person . . . unless:
(1) the lawyer reasonably believes the representation will not be adversely
affected; and (2) the client consents after consultation.”  Colo. Bar Ass’n Ethics Comm., Formal Op. 115
(Feb. 24, 2007)

 





[5]           Indeed, Texas was the first state to
codify collaborative law.  Larry R.
Spain, Collaborative Law: A Critical
Reflection on Whether a Collaborative Orientation Can Be Ethically Incorporated
into the Practice of Law, 56 Baylor
L. Rev. 141, 151 (2004).





[6]           Collaborative law is codified in only
a handful of states.  See Pauline
Tesler, Collaborative Law: Achieving
Effective Resolution in Divorce Without Litigation 132 (American Bar
Association 2008).  However, its general
lack of codification has not hindered its proliferation.  Collaborative law has spread throughout the
United States, Canada, Australia, and Western Europe.  Hon. Tommy Bryan, Saying “No” To Court?,
70 Ala. Law. 434, 434 (2009).





[7]           Mary argues that a collaborative law
agreement must also provide, in a prominently displayed statement that is
boldfaced, capitalized, or underlined, that the agreement is not subject to
revocation and must be signed by each party and the party’s attorneys.  This is incorrect.  Under the statute, any settlement agreement reached by the parties as a result of the
collaborative law process must contain that verbiage and must be signed by the
parties and their attorneys.  Tex. Fam. Code Ann. § 6.603(d).  Because the parties never reached a
settlement agreement, this section is not applicable, even if the remainder of
the statute were otherwise applicable.





[8]           Before us, Mary also contends that she
signed the agreement as a result of mistake. 
However, she did not assert this defense before the trial court.  Consequently, we may not consider in this
proceeding.  See In re Am. Optical
Corp., 988 S.W.2d 711, 714 (Tex. 1998).

 

            Mary
also asserts that the trial court abused its discretion because Gary, although
subpoenaed to testify, did not attend the hearing on Mary’s motions to
disqualify Keen and revoke consent to the Agreement.  However, Mary fails to show how Gary’s lack
of attendance was the result of an abuse of discretion by the trial court.  See Walker v. Packer, 827 S.W.2d 833, 839
(Tex. 1992).